**GETTELMAN MFG. INC. et al.,
Plaintiffs-Appellees,**

v.

**LAWN 'N' SPORT POWER MOWER SALES & SERVICE, INC.,
Defendant-Appellant.**

No. 74–1529.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1975.

Decided June 12, 1975.

Rehearing and Rehearing En Banc
Denied July 22, 1975.

---

Bruce B. Krost, Cleveland, Ohio, for defendant-appellant.

Gerrit D. Foster, Milwaukee, Wis., for plaintiffs-appellees.

Before CASTLE, *Senior Circuit Judge,* PELL, *Circuit Judge,* and JAMESON, *Senior District Judge.*[*]

CASTLE, *Senior Circuit Judge.*

Plaintiffs Gettelman Manufacturing, Inc., Wisconsin Marine, Inc., and Dane T. Scag brought an action against defendant Lawn 'N' Sport Power Mower Sales & Service, Inc. for infringement of claims 1, 5 and 8 of U.S. Patent No. 2,770,894 entitled "Snow Remover of the Rotary Type" and issued to R. O. Gettelman. The defendant counterclaimed for a declaration of invalidity and noninfringement. The district court concluded that the patent was valid and infringed, finding that it was not anticipated by the prior art and was nonobvious.[1] We reverse.

## I.

The patent in suit relates to a snow remover which is designed to be attachable to and operated by a small pedestrian-guided power tractor.[2] The snow remover operates in two stages. In the first stage, as the tractor pushes the snow remover forward, snow is moved laterally toward a center opening in the snow remover by "primary movers" which are also known as "feeder reels." There are two feeder reels, one located on each side of the central opening, and they rotate in the same direction as the tractor's wheels rotate during forward travel. Then, in the second stage, a high speed rotor which is located in the central opening and which rotates in the same direction as the feeder reels, ejects the snow delivered to it by the feeder reels.

The following elements of the snow remover compose the feeder reels. The axis of the feeder reels is a single shaft that runs the entire width of the snow remover (including in front of the cen-

---

[*] Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. The district court also found that the description of the invention complied with the requirements of 35 U.S.C. § 112, and on appeal the defendant does not challenge that conclusion.

2. The patent concerns only the snow remover itself, and the tractor is not part of the claimed invention.

tral opening) and is transverse to the snow remover's normal forward line of travel. Two short arms are secured perpendicularly and 180 degrees opposite from each other approximately at the center of each portion of the shaft located on each side of the central opening. A blade is mounted on each arm (four blades in all, two per feeder reel) and it is affixed at an angle to the axis of the feeder reels such that the outer end of the blade (the end closest to the outer edge of the snow remover) is advanced in the direction of rotation. Thus, only one of the two blades composing each feeder reel cuts into the snow at any one time, and as a result of the angle of the blades, snow is conveyed laterally toward the center opening of the snow remover.

The rotor located in the central opening consists of a disc that is mounted so that its diameter is perpendicular to a shaft that passes through its center and which, as is the case with the axis of the feeder reels, is also transverse to the normal forward path of travel of the snow remover. Projecting laterally from each side of the disc are two slightly angled blades. As the disc with the mounted blades rotates around the shaft passing through its center at a higher speed than the feeder reels, it throws the snow upward and out through the discharge chute faster than it is delivered by the feeder reels.

The shaft of the rotor is located to the rear of and parallel to the shaft of the feeder reels. The inner ends of the blades of the feeder reels are spaced a short distance from the outer edges of the blades of the rotor, and consequently, the feeder reel blades do not intrude into the central space in which the rotor rotates. Since there is no interference from the blades of the feeder reels, the shaft of the rotor is positioned close enough to the shaft of the feeder reels

so that the circumferential path of travel of the blades of the rotor overlaps the circumferential path of travel of the blades of the feeder reels. The result is that the blades of the rotor reach into the open space between the feeder reels, and the feeder reels deliver snow directly to the side of the rotor.

The district court noted that the use of a primary mover (the feeder reels of the patent in suit) in conjunction with a high speed rotor was not novel,[3] and that the parallel positioning of the shafts of the rotor and feeder reels was common as well. There is no argument that any of the elements composing the Gettelman snow remover are new. Thus, the district court isolated the allegedly unique claim of the patent in suit to be the positioning of the rotor on a shaft rearward of and parallel to the shaft of the feeder reels, but close enough thereto to enable the rotor to reach into the space between the feeder reels. This arrangement was found to be crucial to accomplishing the object of the invention as stated in one of the introductory paragraphs of the patent in suit: ". . . to provide a snow remover of the rotary type which will not clog with wet and heavy snow conditions and which may be operated by a relatively small economic pedestrian-guided power tractor." Reviewing the prior art, the district court concluded that the combination of elements as disclosed by the Gettelman patent accomplished the stated objective and was neither anticipated nor obvious. Assuming that the district court correctly decided that the patent in suit was not anticipated, we nonetheless find the patent to be invalid because of obviousness.[4]

## II.

35 U.S.C. § 103 provides that a patent may not be obtained if the sub-

---

3. The more typical primary mover employed was a "worm" or "screw" type conveyor whose helically arranged blades would also move the snow laterally.

4. As stated in *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180, 1183

(7th Cir.), *cert. dismissed* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971):

The obviousness test is somewhat broader in its restrictions on the issuance of valid patents, and prior art which does not render an invention anticipated may nonetheless make it obvious (footnote omitted).

ject matter of the patent taken as a whole is obvious.[5] As set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the ultimate determination of obviousness is a matter of law, but that determination is made in light of certain factual inquiries:

> While the ultimate question of patent validity is one of law, . . . the § 103 condition, . . . lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

In resolving the legal issue after the factual inquiries have been made, if the claimed nonobviousness of the invention rests only on a new combination of old elements, as is the case here, then the claimed invention must pass a "rather severe test" consonant with the difficulty and improbability of finding invention in an assembly of old elements. *Panduit Corp. v. Burndy Corp.,* 517 F.2d 535 at 539 (7th Cir. 1975); *Skil Corp. v. Lucerne Products, Inc.,* 503 F.2d 745, 749 (7th Cir. 1974), *cert. denied* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." *A&P Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 151, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), *quoting Lincoln Engineering Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); *see also Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). With the above method and principles in mind, we turn to the patent in suit.

Many examples of the prior art were presented to the district court, but its scope and content is accurately disclosed by the "Swiss I" (Swiss Patent No. 207,-053), "Ritchie" (U.S. Patent No. 2,482,-213), and "Vanvick" (U.S. Patent No. 2,587,415) patents relied on by the district court and which disclose various types of snow removers. The district court found the patent in suit valid,[6] because the new combination of old elements, the feeder reels and the rotor, permitted construction of a pedestrian-guided snow remover, and the differences disclosed by the patent in suit from the old combinations would not have been obvious to one with ordinary skill in the art. In the district court's view, the differences from the prior art were two.

---

5. That section states in full:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6. Under 35 U.S.C. § 282, a patent is presumed to be valid. The district court's Memorandum Decision and Order does not indicate what effect, if any, it gave to the presumption. The defendant argues that the presumption cannot be applied here because pertinent prior art was not before the Patent Examiner. *See, e. g., Deep Welding, Inc. v. Sciaky Brothers, Inc.,* 417 F.2d 1227, 1234 (7th Cir. 1969), *cert. denied* 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970). Of the prior art that was presented to the district court, only Swiss I was actually cited by the Patent Examiner. The Ritchie patent, which the district court agreed was the "best prior art," was not cited by the Patent Examiner, although it is included within a subclass that the Examiner listed as searched. The Vanvick patent, which the district court characterized as "[p]erhaps the most telling patent," was similarly not cited, and additionally, the sub-class in which it was located was not searched. The defendant also contends that the presumption must fall because classes containing patents disclosing harvesting devices for grain were analogous prior art, and these patents were not considered.

First, according to the district court, by placing the rotor on a shaft parallel to and behind the shaft of the feeder reels, the rotor of the patent in suit avoids contact with unbroken snow.[7] This feature would be important to the objective of designing a snow remover that would be pedestrian-guided, since engagement of unbroken, heavy, wet snow would slow the rotor down so that apparently a greater amount of power would be needed to continue to rapidly eject the snow. The court noted that because the path of travel of the blades of the rotors of the snow removers disclosed by Swiss I and Ritchie were either even with or reached beyond the path of travel of the blades of the primary movers, those rotors engaged unbroken snow,[8] and therefore the court attributed significance to the fact that the patents describe operation of the snow removers by tractor or truck. The court also found that although the patent in suit was initially rejected by the Patent Office in light of Swiss I, in his request for reconsideration Gettelman represented that the rotor would not engage unbroken snow, thereby reducing the power needed, and that subsequently the patent was granted.

Since with respect to the issue of obviousness we believe the snow remover patents adequately disclose the scope of the prior art, the harvester patents must be considered cumulative and therefore the presumption of validity is not undermined. *Schnadig Corp. v. Gaines Manufacturing Co.*, 494 F.2d 383, 391 (6th Cir. 1974). However, the presumption is undermined by the failure of the Examiner to search the class containing the Vanvick patent and to cite that patent. Further, although it is true that if a prior art patent is not cited but the class in which it is included is searched then it is presumed that the Examiner considered that patent and discarded it as being no more relevant than the other prior art, *see Uarco, Inc. v. Moore Business Forms, Inc.*, 440 F.2d 580, 585 (7th Cir.), *cert. denied* 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117 (1971), that presumption cannot work here where the Ritchie patent is characterized as "the best prior art." *Cf. Panduit Corp., supra*, at 538 n. 2. Consequently, we do not think that the presumption of validity is of any aid to the plaintiff.

7. The phrase "unbroken snow" as used here means snow not encountered in the first instance by the feeder reel blades.

From a review of the documentary evidence and undisputed facts, however, we think that the district court was clearly erroneous when it concluded that, unlike the prior art, the rotor of the snow remover of the patent in suit does not engage unbroken snow. As noted in the description of the patent in suit, the feeder reel blades do not intrude upon the central space in which the high speed rotor rotates. The rotor, therefore, encounters snow from two sources: that snow which is delivered to it by the feeder reels, and that snow which lies directly in front of the central opening. The snow which is in front of the central opening is acted upon and broken up for the first time by the rotor, since the feeder reel blades cannot reach it. Thus, although the blades of the rotor do not reach beyond the path of travel of the feeder reel blades, they nevertheless engage unbroken snow in the same manner as the rotors in Swiss I and Ritchie. Therefore, we cannot attribute any significance as to the method of operation of the Gettelman snow remover from the fact that the snow removers in Swiss I and Ritchie were described as being operated by truck or tractor. Consequently, we believe that the district court

8. In Swiss I, the rotor is located in a central opening, and four screw type conveyors, two on each side of the central opening and one of the two mounted above the other, deliver snow to the rotor.

In Ritchie, the rotor is located to one side of the snow remover, and one screw type conveyor running the width of the machine delivers snow to the rotor. The defendant's claim that the blades of the rotor do not reach out beyond the path of travel of the blades of the conveyor, and that therefore the Ritchie patent is in all respects identical to the patent in suit, is based on the mistaken belief that a revolving shaft with angled blades located in front of the rotor is a conveyor. As the specifications disclose, however, that apparatus is a rake or breaker designed to break up snow that may be packed in high drifts, and it only incidentally conveys snow laterally. The rake can be raised to an inoperative position, and it is not equivalent to the feeder reels of the patent in suit.

erred when it concluded that a difference on this basis existed between the prior art and the patent in suit.

This leaves the second difference which the court relied on in finding the patent in suit nonobvious. The court concluded that by positioning the rotor of the patent in suit so that it reached between the feeder reels, the problem of clogging was avoided. If the rotor does not reach into the space in front of it, then the wet, sticky snow will accumulate in the central space and become compacted before that snow is pushed within reach of the rotor by the delivery of more snow. The result is that the rotor must cut the compacted snow all over again, requiring greater power in order to continue the rapid ejection of snow. The high speed rotor of the patent in suit, by reaching in between the feeder reel blades, removes the snow before it can accumulate, thereby avoiding the clogging problem.

In reaching the conclusion that this placement of the rotor would be nonobvious to one skilled in the art, the court pointed to the Vanvick patent which was the only example of a pedestrian-guided snow remover before the court. That patent disclosed a similar arrangement whereby two feeder reels moved snow laterally toward a central opening in which the rotor was located, but the rotor did not reach into the space between the reels. The court noted that a different solution, the placing of a diverting wedge in front of the central space and the use of a tight housing around the feeder reels and rotor, was utilized to prevent the clogging problem. As final support for its conclusion that the patent was nonobvious, the court relied on the testimony of a snow thrower manufacturer who testified that he wished he would have thought of the Gettelman patent first.

We recognize that careful consideration should be given to the district court's conclusion, but since the issue of obviousness is a matter of law, we must be satisfied that the patent in suit is nonobvious. *See Erie Technological*

*Products, Inc. v. Die Craft Metal Products, Inc.,* 461 F.2d 5, 9 (7th Cir. 1972). Although here a difference does exist between the precise arrangement of the feeder reels and rotor as disclosed by the patent in suit and the arrangements found in the prior art, we think the combination falls far short of passing the rather severe test for nonobviousness which is applied to combination patents.

■ The elements composing the snow remover of the patent in suit were old and were known in the prior art. These elements in their new combination did not perform or produce any different function or operation than in the prior art, nor did they take on any surprising quality. Swiss I and Ritchie show rotors which reach into the area where the snow is delivered, and we do not think it would take more than ordinary mechanical skill to combine the teachings of those patents with the teaching of Vanvick to arrive at the patent in suit. There were no technical problems to overcome, and there were no disadvantages disclosed by the prior art which the inventor would be required to ignore in order to place the rotor so that it reaches between the feeder reels. *Cf. United States v. Adams,* 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Additionally, since the clogging problem does not occur where the rotor reaches into the area where the snow is delivered by the primary movers, and since we have found that the Gettelman snow remover does not avoid contact with unbroken snow, it is far from clear to us how the mere fact that the rotor does not reach beyond the path of travel of the feeder reel blades, which the district court found to be the crux of the patent in suit, is any improvement over Swiss I and Ritchie. Finally, in light of the prior art, even if the combination here would require less power, "[t]hat is relevant to commercial success, not to invention." *Anderson's-Black Rock, Inc., supra,* 396 U.S., at 59, 90 S.Ct., at 307. "The aggregation of old parts or elements into a new combination does not constitute invention, regardless of the

added convenience or utility of the result achieved." *Toro Manufacturing Corp. v. Jacobsen Manufacturing Co.,* 357 F.2d 901, 903 (7th Cir. 1966). In view of these factors, we cannot give much weight to the statement of the snow thrower manufacturer. We think the combination disclosed by the patent in suit would be obvious to ordinary persons skilled in the art.

Having found the patent in suit to be invalid, the judgment of infringement must also fall. The judgment of the district court is

Reversed.

JAMESON, *Senior District Judge* (dissenting):

I would affirm the conclusion of the district court that the improvements disclosed by the patent would not have been obvious to one with ordinary skill in the art.

I agree with the majority that obviousness under 35 U.S.C. § 103 is a question of law. Nevertheless, as stressed in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the resolution of the obviousness issue

"lends itself to several basic factual inquires. Under § 103, the scope and content of the prior art are to be determined; the differences between the prior art and the claim at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

In resolving the obviousness issue the district court considered the three basic factual inquiries outlined in *Graham.* The findings of fact made by the district court with respect to those inquiries may not be overturned unless clearly erroneous.

I. *Factual Inquiries*

A. *Nature of the Gettelman Snow-thrower*

An object of the Gettelman patent was "to provide a snow remover of the rotary type which will not clog with wet and heavy snow conditions and which may be operated by a relatively small economic pedestrian-guided power tractor." As stated by the district court:

"The allegedly unique claim of the patent in suit, as evidenced by the amendment necessary to overcome the patent examiner's initial rejection, was the positioning of the rotor with respect to the feeder reel.[1] By arranging the rotor and feeder reel so that the peripheral circumferential path of travel of the rotor was behind the axis of the feeder reel but in partial overlap with the feeder reel's peripheral circumferential path of travel, the patentee claimed to have assured that the rotor would not engage unbroken snow, yet would completely eject collected snow faster than it could accumulate and pack between the feeder reel blades."

The district court found "on the basis of the testimony presented" that the patentee was correct "as to his factual representations concerning the operation of his machine"; that "the relative positioning and relative speeds of the feeder reel and rotor described do preclude contact between the rotor and unbroken or packed snow"; and that "such contact, in heavy or wet snow conditions, would slow down the rotor so that it would not act as a blower unless an uncommercially feasible amount of power were used".

It does not appear to me that either the patent itself or the evidence presented by either party established the existence of an open space between the interior ends of the feeder reel blades which would cause the rotor to engage unbroken snow. In discussing the Vanvick

---

1. The district court recognized that there was "no dispute that the use of a feeder reel in conjunction with the higher speed rotor was not novel"; and that the "parallel positioning of the feeder reel and rotor axis, both transverse to the path of travel, was common as well".

patent the district court noted that the rotor in that invention still contacted unbroken snow even though the rotor was positioned behind the feeder reels "because a rather large space was allowed between the interior ends of the feeder reel blades". Thus, it is clear that the district court was aware of the effect of an open space between the central inner edges of the feeder reels with respect to the rotor contacting unbroken snow. I do not believe it can be said that the court's finding that the relative positioning and speeds of the feeder reel and rotor precluded contact between the rotor and unbroken snow is clearly erroneous.

## B. *Comparison of Gettelman Snowthrower to Prior Art*

The district court found that, "Most of the prior art patents were for snow plow structures designed to be operated on motor vehicles. Thus, considerable power to operate the rotor was available when heavy or wet snow was encountered, and the need to protect the rotor was not as great." For example, the court found that the rotors of the snowthrowers described in the Swiss I and Ritchie patents, which were designed to be operated by truck or tractor, engaged unbroken snow.

Nevertheless, as the district court noted, the problem created by rotor contact with unbroken snow, especially heavy wet snow, was recognized and attempts were made to protect the rotors. In the Vanvick snowthrower patented in 1952, which was the "only example of prior art advanced by the defendant which is purely a pedestrian guided snowthrower" the rotor was placed behind and transverse to the feeder reel. Rotor contact with unbroken snow was still possible, however, because "a rather large space was allowed between the interior ends of the feeder reel blades". To protect the rotors, a diverting wedge was placed in the open space between the ends of the feeder reel.

Summarizing the differences between the Gettelman patent and prior art patents, the district court stated:

"When Mr. Gettelman filed his application, he demonstrated a new method of solving the problems which, as has been shown, were plaguing inventors working on snow removal machines. By placing the rotor on an axis parallel to the feeder reel axis but positioned rearwardly so that the peripheral circumferential path of travel was behind the feeder reel axis, he avoided the problem of rotor engagement with unbroken snow. Furthermore, by overlapping the paths of the blades of each mover, he designed a means whereby the rotor blades could reach into the area where snow was deposited by the feeder reel and eject it before it could accumulate into a practically unmanageable amount. It is apparent that such a result was being sought by others familiar with the art at that time. It is also apparent that the approaches they took were not even close to that taken by Mr. Gettelman."

The district court's findings with respect to the differences between the Gettelman patent and prior art patents are founded on substantial evidence and are not clearly erroneous. As the evidence indicates, the rearward positioning of the rotor so that it reached between the feeder reel, thus preventing clogging, and the fact that the rotor did not contact unbroken snow distinguished the Gettelman snowthrower from all prior art.

## C. *The Level of Ordinary Skill*

Implicit in the district court's opinion is the finding that the level of ordinary skill in the art was not so advanced that Gettelman's invention would have naturally occurred to a mechanic skilled in the art. The court's analysis of the prior art, including the Ritchie, Swiss I and Vanvick patents, indicates that the designers of snowthrowers had been aware for some time of the problem of clogging caused by heavy wet snow conditions and the fact that the rotor contacted unbroken snow. This problem was especially critical with respect to pedestrian guided snowthrowers. Numerous meth-

1202

ods were employed by designers to solve the problem. Gettelman's solution to the problem was both novel and useful. During the trial, Phelps, a snowthrower manufacturer, recognized the unique characteristics of the Gettelman invention and testified that he wished he had thought of it first.[2] I conclude that the court's finding with respect to the level of the art was not clearly erroneous.

## II. Obviousness

The majority opinion correctly notes that, "The mere aggregation of a number of old parts or elements which, in aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not a patentable invention". *A&P Tea Co. v. Super Market Equipment Corp.,* 340 U.S. 147, 151, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), quoting from *Lincoln Engineering Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). *Accord, Toro Manufacturing Corp. v. Jacobsen Manufacturing Co.,* 357 F.2d 901, 903 (7th Cir. 1966). On the other hand, it is likewise true, as stated in *Higley v. Brenner,* 128 U.S.App.D.C. 290, 387 F.2d 855, 858 (1967), that, ". . . even if all of the elements used are old, a new result, an unexpected result, a far more

efficient result or a more economical result will satisfy the requirements of patentability". *See, e. g., The Barbed Wire Patent,* 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892);[3] *Blaw-Knox Co. v. I. D. Lain Co.,* 230 F.2d 373 (7 Cir. 1956).[4]

There is substantial evidence to support the conclusion of the district court that the Gettelman snowthrower provided a unique solution to the clogging problem which had troubled designers of snow removal equipment and produced a result sought by others skilled in the art. The rearward positioning of the rotor so as to create a partial overlap with the feeder reel's circumferential path of travel, produced results which were both unexpected and economically important.

The Supreme Court, in *Graham, supra,* 383 U.S. at 18, 86 S.Ct. at 694, noted that "What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context". The diverging opinions of this court and the district court demonstrate the truth of that observation. While the obviousness issue is a close one, I would hold that the district court did not err in concluding that the subject matter claimed in the Gettelman patent was not obvious.

I would affirm.

---

**2.** Phelps testified in part:

"Q. Again, referring to the description in the Gettelman Patent, there is a statement that the rotor picks off snow from the feeder reel at a greater speed than such feeder reel can deliver such snow. To what does that— what meaning do you attribute to that statement?

"A. Well, that means there can be no snow left at any time in the center of the machine. There can be no clogging because the wheel that picks it off or paddles that pick it off have a greater capacity for getting it out of the way than the feeder reel has for feeding it in there.

"A. I'd like to add the snow's in constant contact with mechanically-driven elements and that's why I wish I thought of it first.

"Q. Are you referring then to the manner in which the feeder reel transmits snow to the high speed rotor?

"A. Yes."

**3.** In *The Barbed Wire Patent,* the Court held patentable the applicant's method of produc-

ing barbed wire even though the difference between the appellant's method and that disclosed by the prior art was slight. As the Court noted, appellant's method proved to be a great commercial success. The Court stated, "There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of a series of inventors, all of whom were groping to attain a certain result, which only the last one of the number seemed able to grasp . . . . It may be laid down as a general rule . . . that if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention." 12 S.Ct. at 446, 36 L.Ed. at 158.

**4.** In *Blaw-Knox Co.,* this court held a mechanism for paving concrete highways patentable even though the specific elements comprising the mechanism were known in the art. The court found that the specific arrangement and placement of the elements in combination had never been suggested and, solved the problem that had confronted road builders. *Id.* 230 F.2d at 376.