**Walter H. PEDERSON, Plaintiff,**

v.

**STEWART-WARNER CORPORATION,
Defendant.**

No. 73 C 2607.

United States District Court,
N. D. Illinois, E. D.

July 23, 1975.

Harold J. Kinney, St. Paul, Minn., Rolf O. Stadheim, Haight, Hofeldt, Davis & Jamber, Chicago, Ill., for plaintiff.

Theodore R. Scott, Augustus G. Douvas, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

In this case, a jury found that the plaintiff, Walter H. Pederson, had a valid patent for a snowmobile speedometer, and that the defendant, Stewart-Warner Corporation ("Stewart-Warner") had willfully infringed the patent through the sale of parts from which a snowmobile owner or manufacturer could mount a speedometer on a snowmobile. Damages of $140,000 were assessed as part of the verdict. Defendant has moved for a judgment notwithstanding the verdict, or in the alternative for a new trial, under Rule 50 of the Federal Rules of Civil Procedure. Because of the inadequacy of the facts presented to support the verdict, both motions will be granted.

In considering the motion for judgment notwithstanding the verdict,

this court has carefully reviewed the evidence adduced at trial. There is in patent cases a fine line between the constitutional right to a trial by jury, and the constitutional limitation on the governmental creation of an enforceable patent monopoly. The plaintiff is entitled, as he requested in this case, to have the jury resolve issues of fact, but a jury's finding of patent validity necessarily encompasses issues of law. Therefore, to properly consider the motion for judgment notwithstanding the verdict, the court must inquire, under the proper legal standard of patentability, "whether the evidence, together with all reasonable inferences which may be drawn therefrom, when viewed in the light most favorable to the party against whom the motion is directed, is insufficient to support the verdict." *Appleman v. U. S.*, 338 F.2d 729, 730 (7th Cir. 1964), *cert. denied,* 380 U.S. 956, 85 S. Ct. 1090, 13 L.Ed.2d 972 (1965); Moore's Federal Practice, ¶ 50.07.[1] In conformity with *Armour & Co. v. Wilson & Co.*, 274 F.2d 143 (7th Cir. 1960), the court treats this case as it would any other civil litigation.

Defendant produced uncontroverted evidence as to the prior art and use of speedometers. The plaintiff's evidence showed that his speedometer patent satisfied a long-felt need, was an enormous commercial success when produced, and that the speedometer differed in its assembly (in some respects) from earlier speedometers.

■ Plaintiff's closing argument to the jury presented an intriguing version of the law of obviousness of a patent, placing emphasis on the notion that a long-sought invention or idea, once supplied by another, may seem very obvious and simple in retrospect. While this version is generally correct, it cannot, by

extension, enable a jury to grant a patent monopoly to a clever and valuable mechanical solution which nevertheless fails to rise to the level of innovation necessary for a patent. As the Third Circuit indicated in *Packwood v. Briggs & Stratton Corp.*, 195 F.2d 971, 973 (3d Cir.), *cert. denied,* 344 U.S. 844–45, 73 S.Ct. 61, 97 L.Ed. 657, *reh. denied,* 344 U.S. 882, 73 S.Ct. 174, 97 L.Ed. 683 (1952), "A jury in a patent case is not free to treat invention as a concept broad enough to include whatever discovery or novelty may impress the jurors favorably." The determination as to whether a patent is invalid by reason of obviousness is a matter of law. *Armour & Co. v. Wilson & Co., supra; accord, Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir. 1972), *cert. denied,* 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973); *Allen Industries, Inc. v. National Sponge Cushion, Inc.*, 292 F.Supp. 504 (D.N.J.1967) (granting judgment notwithstanding the verdict of patent validity), *aff'd,* 403 F.2d 717 (3d Cir. 1968), *cert. denied,* 394 U.S. 920, 89 S. Ct. 1194, 22 L.Ed.2d 453, *reh. denied,* 394 U.S. 1025, 89 S.Ct. 1627, 23 L.Ed.2d 50 (1969).

The importance of the legal standard of obviousness is underscored in this verdict since there was no real controversy as to the allegation that Stewart-Warner's products utilized, at least in part, the Pederson claims. The major issue was whether those utilized claims were validly patented to justify the jury in its finding of infringement.

*Evidence at Trial*

The speedometer art relevant to this case involves the monitoring of the movement of rotary driven vehicles such as cars, tractors, or snowmobiles. The plaintiff's patent concerns speedometers

---

1. This standard is not to be confused with the state standard which would apply in diversity cases. *See Gullett v. St. Paul Fire and Marine Insurance Co.*, 446 F.2d 1100, 1103 (7th Cir. 1971) ; *Hannigan v. Sears,* *Roebuck and Co.*, 410 F.2d 285 (7th Cir. 1969). Judgment notwithstanding the verdict would be awarded if the diversity standard were applied, in any event.

for snowmobiles. The basic function of speedometers is to transform the rotary motion of a shaft, in some proportion, and ultimately to display that motion on the speedometer head (i. e. dial). The display may take the form of the rate of movement (speed), or the accumulation of movement (distance), in which case the device may also be referred to as an odometer.

Precisely the same function is performed by a tachometer in measuring the rotary speed of an engine shaft. The display may differ from that of a speedometer on the same vehicle because of slippage, transmission gearing, or clutching which take place between the engine shaft and the shaft which supplies the actual force of movement.

The Pederson patent, No. 3478606, issued from the United States Patent Office on November 18, 1969, and was filed December 4, 1967. It is entitled, "Apparatus For Indicating The Relative Movement Of A Snowmobile". The specific claims under this number granted by the Patent Office [2] can be summarized as follows: Much of the rotational

2. "1. An apparatus for indicating the movement of a snowmobile, comprising
an adaptor means, connected to an operatively driven hollow drive shaft of a snowmobile, for transmitting the rotational motion of the drive shaft, said adaptor means including means to frictionally engage the inner wall of a said hollow drive shaft whereby the rotational motion of the drive shaft will be transmitted to said adaptor means;
a motion transfer means including
 a drive assembly operatively connected to said adaptor means for receiving said rotational motion of said drive shaft,
 a driver assembly for providing an output rotational motion, and
 means for transmitting rotational motion from said drive assembly to said driver assembly and to afford selective variance of the transmitted output rotational motion of said driver assembly relative to the rotational motion of said drive assembly; and
 means for receiving said output rotational motion from said driver assembly and for indicating the snowmobile's movement.
"2. An apparatus for indicating the movement of a snowmobile, as defined by claim 1, wherein:
said adaptor means further comprises a truncated conically shaped adaptor that is pressed into the driven hollow shaft to thereby minimize any relative motion between said adaptor means and the driven hollow shaft.
"3. An apparatus for indicating the movement of a snowmobile, as defined by claim 2, wherein:
said adaptor means further comprises at least one groove on the outer periphery of said adaptor to operatively engage a projection on the inner wall of the driven hollow shaft to thereby further minimize any relative motion between said adaptor means and the driven hollow shaft.

"4. An apparatus for indicating the movement of a snowmobile, as defined by claim 3, wherein:
said motion transfer means further comprises a rotational velocity adjustment means; said rotational velocity adjustment means further comprises:
 a drive means;
 a driven means; and
 a motion transfer means operatively connected to said drive means and said driven means, whereby the drive means and driven means may be selectively varied to vary the output motion from said motion transfer means.
"5. An apparatus for indicating the movement of a snowmobile, as defined by claim 1, wherein:
said adaptor means further comprises a coil means that is pressed into the driven hollow shaft to thereby minimize any relative motion between said coil means and the driven hollow shaft.
"6. An apparatus for indicating the movement of a snowmobile, comprising
an adaptor means, threadly connected to an operatively driven hollowed end of a drive shaft of a snowmobile, for transmitting the rotational motion of the drive shaft;
a motion transfer means including
 a drive assembly operatively connected to said adaptor means for receiving said rotational motion of said drive shaft,
 a driver assembly for providing an output rotational motion, and
 means for transmitting rotational motion from said drive assembly to said driver assembly and to afford selective variance of the transmitted output rotational motion of said driver assembly relative to the rotational motion of said drive assembly; and
 means for receiving said output rotational motion from said driver assembly and for indicating the snowmobile's movement.

energy of the snowmobile engine is ultimately transmitted to the drive axle (otherwise referred to as the drive shaft), the rotation of which causes a simultaneous rotation of an "endless track" or tank type tread whose outer surface touches the snow and moves the snowmobile. The track thus performs the function of the rear tires of an ordinary automobile. One end of the drive shaft is made hollow, and an adaptor is fitted inside. As the shaft rotates, the adaptor is supposed to rotate with it. The adaptor is indirectly connected to the speedometer head. Should the adaptor slip, less movement will be indicated than actually occurs. To prevent slippage, the adaptor is made of a conically shaped resilient material which is wedged into the hollow end of the shaft to produce a frictional engagement.

The adaptor turns a small shaft which turns a first sprocket. The first sprocket turns a chain which drives a second sprocket. The second sprocket drives, or causes to rotate, a flexible shaft which feeds into the speedometer head. By varying the size of the second sprocket, the rotational speed of the drive shaft (and adaptor) can be proportioned so as to conform with the calibration of the speedometer head. If this proportioning is correctly done, the speedometer will indicate the speed of movement (*e. g.*, thirty miles per hour) rather than just a figure of relative accuracy (*i. e.*, wherein a reading of thirty miles per hour indicates twice the speed of a fifteen miles per hour reading, but not the actual speed of thirty miles per hour).

■■ If there was a truly innovative feature in this patent, it was the use of (1) the hollowed end of a (2) drive shaft, and plaintiff so testified. Most snowmobiles prior to the time the patent was filed did not have an accessible, hollow ended drive shaft, but in 1967, the Bombardier Company, a manufacturer of snowmobiles, fitted the end of the drive shaft with a removable bearing cup. Pederson's claims were thus formulated at a time when a substantial potential commercial market for snowmobiles with an accessible connection for speedometers had just appeared. The defendant demonstrated, however, that these "innovations" were not new in terms of the prior art. None of this prior art had been considered by the Patent Office which allowed the claims.[3]

There was uncontradicted testimony that in 1960, Edgar Hetteen installed and used a snowmobile speedometer which operated through the direct insertion of the core of the speedometer cable into the end of a shaft which had been drilled or hollowed out. While this shaft was not the drive shaft exactly analogous to the one Pederson intended to use, it was a shaft, nonetheless. The difference in rotation between the Hetteen shaft and the drive shaft is one of proportion only, and it is therefore the functional equivalent of the drive shaft, for speedometer purposes.

"7. An apparatus for indicating the movement of a snowmobile, as defined by claim 6, wherein:

said motion transfer means further comprises a rotational velocity adjustment means; said rotational velocity adjustment means further comprises;

a drive means;
a driven means; and

a motion transfer means operatively connected to said drive means and said driven means, whereby the drive means and driven means may be selectively varied to vary the output motion from said motion transfer means."

There is no indication at trial that the use of a weld seam, or spring (as an alternative to the conically shaped adaptor) was allegedly infringed by Stewart-Warner. Consequently, these aspects of the patent claim are not relevant to the pending motions.

3. For this reason, the fact that the patent was granted does not confer any lasting presumption of validity. For the same reason, the testimony by persons who were unacquainted with the entirety of the prior art cannot raise a controversy as to obviousness of the patent. *See Research Corporation v. Nasco Industries, Inc.*, 501 F.2d 358 (7th Cir. 1974).

In 1962, the International Harvester Company sold one hundred snow tractors to the Department of Sanitation of the City of New York. Gayle Stenstrom, who had responsibility for minor engineering changes for special orders from International Harvester, testified that the speedometers for these tractors utilized the hollowed end of a brake shaft to drive the speedometer cable. A clutch was pressed into the hollowed end, thereby frictionally engaging the shaft. The frictional engagement provided a non-slipping means of transferring the rotary motion of the shaft to a set of interlocking "right angle" gears. The shaft motion is transferred to one gear which turns the other gear at a right angle to the first gear. The other gear turns the speedometer cable, which turns the inside of the speedometer head. Thus, the brake shaft, which turned in proportion to the drive shaft of the tractor, itself drove the speedometer.

Myron Johnson, an engineer employed by the defendant, testified as to the pre-1966 existence of two Stewart-Warner tachometers, and the speedometers of two automobiles, all four of which took their rotational input from the hollowed end of a rotating shaft.

The speedometer/odometer head (i. e., the device commonly mounted on the vehicle dashboard which displays speed and distance), and the flexible shaft which derives it, are standard items, and no originality is claimed as to them individually. Moreover, the sprocket and chain device for varying the proportion of drive shaft rotational velocity which is translated to the speedometer head was admitted by the plaintiff to be contained in the prior art of mechanical devices. No evidence was introduced to the contrary.

The items actually manufactured and sold by defendant Stewart-Warner, insofar as they are relevant to the motions under consideration, included an adaptor that was smaller at one end than the other (cf. the conical shape of Pederson's adaptor), and which was made of a resilient material. They also included a set of helical interlocking gears whose dimentions could be chosen, as is the case with the sprocket and chain arrangement, to vary the proportion of rotational speed that is ultimately transmitted to the speedometer head. Other items, such as brackets, speedometer head and shaft, were manufactured and sold by Stewart-Warner, but were not individually claimed by the patent. These items formed a combination which is, however, disclosed by the patent.

Over the objection of the defendant, evidence was submitted by Pederson regarding the sale of the elements of the claimed combination to manufacturers. This evidence included the payments Stewart-Warner received for such standard items as speedometer heads and flexible cables. The elements were not sold in quantities particularly proportioned to use in the claimed combination.

Additional evidence of damages was provided for sales by Stewart-Warner of speedometer "kits" which included a set of elements similar to those in the Pederson claim, and instructions for assembling the elements for a speedometer like the one disclosed in the Pederson claim. The kits were sold as units, so that the proportion of elements in those sales corresponded to the construction of a particular combination.

The damages awarded of $140,000 were predicated upon sales by Stewart-Warner in both categories. In its motion for a new trial, the defendant has assigned as error the total absence from the record of proof that the purchasers of the elements "assembled them into speedometers which were installed in snowmobiles in such a way as to infringe any of the claims" of Pederson's patent.

*Motion for Judgment Notwithstanding the Verdict*

No part of the jury verdict can stand if, as a matter of law, the Peder-

son patent is invalid. Two inquiries are necessary to reach this determination, namely, whether the devices patented were obvious in light of the prior art, and, if not, whether the combination of otherwise obvious devices accomplished a new function greater than the sum of the parts.

■ Under *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966), the 35 U.S.C. § 103 [4] requirement that a patentable device not be obvious may be considered by a three-step approach: (1) What was the scope and content of the prior art; (2) what is the difference between the prior art and the patent claim being reviewed; and (3) what is the level of ordinary skill in the pertinent art? Accord, *Research Corporation v. Nasco Industries, Inc.,* 501 F.2d 358 (7th Cir.), *cert. denied* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974); *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180 (7th Cir. 1971), *cert. dism'd* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971).

The prior art included devices which translated rotary motion from the end of a shaft by means of a frictionally engaged adaptor or clutch in a hollowed end. It also included flexible shafts, gear or sprocket devices that proportionately transferred rotary motion, and speedometer/odometer/tachometer heads that displayed the rotary motion as a rate and/or accumulation of movement.

The difference between the prior art and the Pederson patent, save the actual combination of the various devices, [5] is only in the particular shaft from which the rotary motion is ultimately measured, the shape of the adaptor, and the application of these devices to snowmo-

biles. Under the standard of review set forth in *Appleman v. U. S., supra,* it was established at trial that the defendant manufactured items which made profitable use of these differences. The question which remains is whether the Pederson claims constituted a departure from the prior art which was patentable, or whether the departure would have been obvious to one skilled in the prior art. *Popeil Brothers, Inc. v. Schick Electric, Inc.,* 494 F.2d 162, 167 (7th Cir. 1974); *Frantz Manufacturing Co. v. Phenix Manufacturing Co.,* 457 F.2d 314, 321–22 (7th Cir. 1972); *Jack Winter, Inc. v. Koratron Company, Inc.,* 375 F.Supp. 1, 34 (N.D.Cal.1974).

■ It is this court's conclusion that the departures from the prior art are not innovative enough to constitute a valid patent. Changes of size and shape, without especial functional significance, are not patentable. *Research Corporation v. Nasco Industries, Inc., supra.* There was no indication that the conical shape or resilient material of the adaptor solved any problem or was in any other way superior to the frictional engaging of the prior art. *See Sinclair & Carroll Co. v. Interchemical Corp.,* 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945); *Johnson & Johnson v. Kendall Co.,* 327 F.2d 391 (7th Cir.), *cert. denied* 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297 (1964). Given the fact that any shaft rotating in proportion to the drive shaft could have been used as well as the drive shaft, the patent, as applied to snowmobiles, calls for nothing beyond the ordinary skill of one versed in the prior art.

■ Even if the devices of the claim are themselves obvious in the context of

---

4. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time

the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C. § 103.

5. See pages 1268, 1269, *infra.*

the prior art, they may be combined in a unique fashion which is itself patentable. Such patents are looked at with extreme scrutiny because of the constitutional policy of preventing persons from monopolizing an area of manufacture. Historically, this policy was formulated in the aftermath of the British experience, wherein the Crown dispensed trade monopolies to its favorites. *See Graham v. John Deere Co., supra,* 383 U.S. at 5, 86 S.Ct. 684. In a country which has chosen to allow such monopolies only as a reward and inducement for "innovation, advancement, or social benefit", patents for combinations of obvious or already rewarded devices are disfavored. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *Graham v. John Deere Co., supra,* 383 U.S. at 6, 86 S.Ct. 684; *Great A. & P. Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *Lincoln Engineering Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); *Gettelman Mfg., Inc. v. Lawn 'N' Sport,* 517 F.2d 1194 (7th Cir., filed June 12, 1975).[6] To approach the patentability of combinations more loosely would remove knowledge which is already in the public use.

This combination did not create a new function. All of the devices were used in the fashion customary in the prior art, and they functioned no better as a result of being combined; they merely measured the speed from a rotating shaft. In contrast, as an example, is *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., supra,* where the combination of one piece plastic construction and a particular rim shape yielded a vending machine cup which, unlike all it predecessors, could remain stacked for years and still be easily separable.

Both the shape and the one piece construction were part of the prior art of cup-making.

 Relevant to both of these inquiries for the motion for judgment notwithstanding the verdict is the demonstration, before the jury, that Pederson's claims were commercially successful, and that they solved a problem, measuring the speed of a snowmobile, which others, like Stewart-Warner, had previously been unable to do. The conclusion contended by plaintiff from these facts is that his claims were *not* obvious. These factors are relevant and probative in the determination of obviousness. *Graham v. John Deere Co., supra,* 383 U.S. at 17, 86 S.Ct. 684; *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., supra.* In a doubtful case, they might "tip the scale" in favor of a finding of non-obviousness. *Research Corporation v. Nasco Industries, Inc., supra* at 360. However, standing alone against all the indicia of obviousness in the present case, they cannot, by themselves, give rise to a finding or conclusion of non-obviousness. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., supra; Panduit Corp. v. Burndy Corp.,* 517 F.2d 535 (7th Cir. filed May 30, 1975); *Bentley v. Sunset House Distributing Corp.,* 359 F.2d 140 (9th Cir. 1966); *Vollrath Co. v. Premium Plastics, Inc.,* 385 F.Supp. 843, 850 (N. D.Ill.1974); *Allen Industries, Inc. v. National Sponge Cushion, Inc.,* 292 F. Supp. 504, 518 (D.N.J.1967). Moreover, "[the] difficulty experienced by a particular individual is not conclusive because the ultimate question is whether a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem." *Gass v. Montgomery Ward & Co.,* 387 F.2d 129, 130 (7th Cir. 1967) (footnote omitted).

6. "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. . . .

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great A. & P. Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

Commercial advantages cannot by themselves support a finding of innovative functional significance. *Gettleman Mfg., Inc. v. Lawn 'N' Sport, supra,* at 541. More than a new advantage of the product is required. *General Electric Co. v. Jewel Co.,* 326 U.S. 242, 249, 66 S.Ct. 81, 90 L.Ed. 43 (1945).

*Motion for a New Trial*

Under the Federal Rules of Civil Procedure 50(c)(1), this court must rule on the alternative motion for a new trial on the supposition that the judgment notwithstanding the verdict could in the future be vacated or reversed. Given that hypothetical, this motion is conditionally granted, because of the erroneous admission of some of the evidence as to damages, and the nature of the jury's consideration of other evidence.

Upon review of the record, the court finds no evidence whatsoever that the manufacturers utilized these elements in the way Pederson combined them. It bears repeating in this connection that shafts other than the drive axle would be usable for the mounting of a speedometer, combination, and that many, if not all, the elements (old and non-patentable) could have been used without reference to the combination.

■ Moreover, there was no proof that the elements were ever used in snowmobile speedometers which were mounted in the hollowed end of the drive axle. The single testimony by defendant's planning manager, Andrew Zocher, that the elements were to be used as original equipment on snowmobiles cannot support a jury finding that such a use was infringing. Consequently, the court erred when it admitted evidence as to the sales of elements which were not grouped together as kits, and it erred in its instructions to the jury concerning this evidence.

In view of these errors, in the event of a new trial, it would be necessary to assess what portion of the articles sold by Stewart-Warner infringed on those of Pederson's claims that might ultimately be determined as valid.

*Conclusion*

For the foregoing reasons, the motions of defendant Stewart-Warner for judgment notwithstanding the verdict and in the alternative for a new trial, are hereby granted. In view of this disposition, there is no need to rule on plaintiff's motions for increased damages, interest, costs, attorneys' fees, and injunctive relief.