Walter H. PEDERSON, resident of Minnesota, Plaintiff-Appellant,

v.

STEWART–WARNER CORPORATION, a corporation of the State of Virginia, Defendant-Appellee.

No. 75–1915.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1976.

Decided June 23, 1976.

Rehearing and Rehearing In Banc Denied July 20, 1976.

Rolf O. Stadheim, Chicago, Ill., Harold J. Kinney, St. Paul, Minn., for plaintiff-appellant.

Theodore R. Scott, Augustus G. Douvas, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, TONE and BAUER, Circuit Judges.

TONE, Circuit Judge.

After a jury had found plaintiff's patent for a snowmobile speedometer valid and wilfully infringed by defendant, the district judge entered judgment for defendant notwithstanding the verdict on the ground that the patent was invalid for obviousness. 400 F.Supp. 1262 (N.D.Ill.1975). We affirm.

Plaintiff Walter H. Pederson developed a snowmobile speedometer in preparation for a snowmobile expedition to the North Pole

to be undertaken in the summer of 1966. The device he developed proved successful on the trip and served as a prototype for speedometers he began manufacturing and selling in 1967. His application for a patent on the device filed later that same year resulted in the issuance in November 1969 of Patent No. 3,478,606, which is before us. Pederson brought this infringement suit based on the patent in 1973 seeking an injunction and damages. Defendant raised the issues of infringement and invalidity for obviousness. See 35 U.S.C. § 103. We need to reach only the issue of obviousness.

The patent describes a device for transferring the rotational movement of a snowmobile's drive shaft onto a speedometer cable: A conically-shaped adapter or bushing is first inserted into the end of the hollow drive shaft and may be held in place by various means, including friction, threads, projections on the inner wall of the drive shaft, or a spring device arranged inside the shaft. The adapter is then connected to a gear assembly, by means of a short, square shaft, one end of which is fitted into the bushing, and the other into the gear assembly. The gear assembly contains an input gear, which receives the full rotational movement of the drive shaft, an output gear, which rotates proportionately to the input gear, and a transfer device, such as a chain, for transferring the motion from the input gear to the output gear. The purpose of the gear assembly is to vary selectively the rotational movement, depending on the features of the snowmobile and the requirements of the speedometer. The output gear is then attached to a flexible cable, which carries the motion to the speedometer head, which is usually mounted on the dashboard of the snowmobile. The patent claims cover the drive shaft adapter, the various means of holding it in place, and the gear assembly. For a more complete description see 400 F.Supp. at 1265 n.2.

### 1.

In arguing that the Patent Act of 1952, 35 U.S.C. § 103, replaced the requirement of "invention," *Hotchkiss v. Greenwood*, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851),

with that of "non-obviousness," plaintiff overlooks the constitutional basis for the requirement of "invention." See *Sakraida v. Ag Pro, Inc.*, —— U.S. ——, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976). The *Sakraida* case reaffirms the holding of *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), that section 103 did not change the law, and that the standard stated in section 103 is a codification of judicial precedents requiring invention. Thus the requirement of non-obviousness is a paraphrase of the requirement of invention.

### 2.

Obviousness is a question of law. *E–T Industries, Inc. v. Whittaker Corp.*, 523 F.2d 636, 641 (7th Cir. 1975); *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 227 (7th Cir. 1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973); *Armour & Co. v. Wilson & Co.*, 274 F.2d 143, 156 (7th Cir. 1960). To decide that question determinations of fact must also be made:

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co., supra*, 383 U.S. at 17, 86 S.Ct. at 694.

See also *Sakraida v. Ag Pro, Inc., supra*, —— U.S. at ——, 96 S.Ct. at 1536. When, as here, the case is tried to a jury and a general verdict is rendered on the question of validity, disputed factual questions are presumed to have been resolved favorably to the party in whose favor the verdict was returned. *Panther Pumps & Equipment Co. v. Hydrocraft, Inc., supra*, 468 F.2d at 228. On the basis of the facts so determined, the court must then decide the issue of obviousness. *Id.* Because obviousness is a question of law, opinions of experts on that question are not among the facts presumptively decided in the winning party's favor, and the District Court in this case was therefore not bound to accept expert testimony offered by plaintiff as to what

would not have been obvious to one with ordinary skill in the art.

■ The District Court's opinion invalidating the patent for obviousness discusses at some length evidence presented at trial on the scope and content of the prior art and the differences between the prior art and the Pederson patent. See 400 F.Supp. at 1264–1268. Plaintiff argues that the district judge erred in failing to make a finding as to the level of ordinary skill in the art as required by *Graham, supra,* 383 U.S. at 17, 86 S.Ct. 684. This argument overlooks the fact that, because plaintiff chose to demand a jury, the trier of facts was the jury, not the court. If plaintiff wanted specific findings on that issue he should have asked the court to submit an appropriate special verdict under Rule 49(a), Fed.R. Civ.P., although whether to submit such a verdict was for the trial court's discretion. There was, we note, uncontested evidence showing that the design and manufacture of instruments that measure the speed of rotation is an old art in which defendant has long been engaged.

### 3.

The Supreme Court has recently reminded us, in reversing a decision of the Fifth Circuit which had upheld a patent claiming a new combination of old elements that combination claims should be "scrutinize[d] . . . with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Sakraida v. Ag Pro, Inc., supra,* —— U.S. at ——, 96 S.Ct. at 1537, quoting from *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). This court has often recognized that such a claim must pass a "rather severe test" of obviousness. *Gettelman Mfg. Inc. v. Lawn 'N' Sport Power Mower Sales & Service, Inc.,* 517 F.2d 1194, 1197 (7th Cir. 1975); *Panduit Corp. v. Burndy Corp.,* 517 F.2d 535, 539 (7th Cir. 1975), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975); *Skil Corp. v. Lucerne Products, Inc.,* 503 F.2d 745, 749 (7th Cir. 1974); *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975); *Toro*

*Manufacturing Corp. v. Jacobsen Manufacturing Co.,* 357 F.2d 901, 904 (7th Cir. 1966). That test, stated "about as precisely as the subject permits," was set forth in *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra,* 340 U.S. at 151, 71 S.Ct. at 129 (1950), quoting *Lincoln Engineering Co. v. Stewart-Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008 (1938): "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." The Court added: "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." 340 U.S. at 152, 71 S.Ct. at 130. See also *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). The Court applied these principles in *Sakraida,* holding that a patent which "simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations" is "not patentable under standards appropriate for a combination patent." —— U.S. at ——, 96 S.Ct. at 1537.

### 4.

■ At trial defendant introduced several prior art references into evidence. The first was a snowmobile speedometer that functioned for some 700 miles on a cross-country trip through Alaska in 1960. That speedometer was driven by inserting one end of the cable into the end of a rotating shaft which in turn was driven by the main drive shaft. Plaintiff attacks this evidence, which is largely based on oral testimony, on various grounds and argues that the drive arrangement proved unsuccessful on the trip and was abandoned thereafter. It is questionable whether such a limited and unpublicized use would qualify as "prior art," *cf. Deep Welding, Inc. v. Sciaky Bros., Inc.,* 417 F.2d 1227, 1235 (7th Cir. 1969),

*cert. denied,* 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970); *Deller's Walker on Patents,* § 107 at 114, 124 (2d ed. 1964); the evidence would, however, be relevant to show the ordinary skill in the art. We cannot tell, of course, how the jury evaluated this evidence, but we need not rely upon it to determine the question of obviousness, for there is other stronger evidence of analogous applications of the elements of the claimed invention.

In 1959 and 1960 International Harvester Company built, and sold to the New York City Sanitation Department, over 100 tractors having a speedometer-drive arrangement which was similar in important respects to the claimed combination. The components were furnished by defendant. In this arrangement the speedometer cable was driven by attaching one end of it to a "right angle gear assembly." The gear assembly was engaged and driven by a "drive tip," or short metal shaft, which had a bushing attached to its opposite end. The drive tip and bushing were then pressed into the hollow end of a brake shaft, which drove one of the tractor's rear wheels.

Also pertinent is evidence relating to tachometers, which measure engine revolutions rather than wheel revolutions and are applied by means of a flexible cable to an engine take-off instead of a take-off proportioned to road speed. Defendant's 1966 instrument catalogue shows, among various kinds of tachometer-drive arrangements offered by defendant for sale, one which utilized a hole drilled in the end of a rotating shaft, into which was inserted a bushing and the flexible cable connected to the tachometer head. Another drive shown in the catalogue also took its rotational input from the hollowed end of a rotating shaft.

The tractor speedometers and defendant's tachometers were applications to which one with skill in the art could "reasonably be expected to look for solutions to the problems which the patented device attempts to solve," *Fischer & Porter Co. v. Haskett,* 354 F.Supp. 464, 477 (E.D.Pa.1973), regardless of the inventor's actual awareness of those applications, *Arrow Safety Device Co. v. Nassau Fastening Co.,* 496 F.2d 644, 646 (3d Cir. 1974). These prior-art devices establish that measuring the speed of a rotating shaft by a means connected to the inner wall of one end of the shaft was known well before plaintiff's alleged invention. Plaintiff's combination of elements did not create a new technique for making such a measurement. Application of the take-off apparatus to the drive shaft rather than a brake shaft, as in the tractor speedometers, is not a patentable distinction. Plaintiff himself testified that the take-off could be made from any shaft rotating in proportion with the drive shaft.

Plaintiff seeks to distinguish the tractor speedometers because, being attached to a shaft which drove the left wheel, they registered inaccurately on left turns. This fact, however, does not make their teaching irrelevant. "Under § 103 . . . a claimed invention may be obvious, even though it is not identically disclosed or described by the prior art; it is sufficient that the subject matter of the patented article, taken as a whole, has been disclosed by the prior art." *Panduit Corp. v. Burndy Corp., supra,* 517 F.2d at 538–539. For the same reason, connecting the flexible cable to a speedometer head, rather than a tachometer head, and placing the drive components in a snowmobile, rather than some other vehicle, are not patentable ideas. Compare *Research Corp. v. Nasco Industries, Inc.,* 501 F.2d 358, 360 (7th Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). See also *Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp.,* 372 F.2d 263, 268 n.1 (2d Cir. 1967); *Skee-Trainer, Inc. v. Garelick Mfg. Co.,* 361 F.2d 895, 898 (8th Cir. 1966). "[W]hether treated as prior art or as evidence of the state of skill in the art," *Skil Corp. v. Lucerne Products, Inc., supra,* 503 F.2d at 749, the undisputed references relied upon by defendant show that "this particular use of the assembly of old elements would be obvious to any person skilled in the art of mechanical application," *Sakraida v. Ag Pro, Inc., supra,* —— U.S. at ——, 96 S.Ct. at 1537.*

---

* As we said earlier, because obviousness is a question of law and reviewable as such, we are not bound by the jury's acceptance of the testimony of Pederson's expert, who gave the opin-

With respect to the patent's commercial success and defendant's failure to develop a snowmobile speedometer earlier than it did, we have nothing to add to the District Court's excellent analysis. See 400 F.Supp. at 1269–1270. Both factors are relevant to the question of patentability, but, as the District Court said, "they cannot, by themselves, give rise to a finding or conclusion of nonobviousness." See also *Sakraida v. Ag Pro, Inc., supra,* —— U.S. at ——, 96 S.Ct. at 1537.

AFFIRMED.

ion that the patent was not obvious. It is not clear, moreover, that his opinion took into consideration the prior art cited by defendant. He did examine the five patents cited against the Pederson application by the Patent Office, which neither party offered in evidence. Defendant's expert, however, gave a negative response when asked whether "any of the five patents . . . cited by the Patent Office show speedometer installations in which a bushing is positioned in a hole in the end of a rotating shaft."