**PARTICLE DATA LABORATORIES, INC., Plaintiff and Counterclaim Defendant, Appellee,**

v.

**COULTER ELECTRONICS, INC., Defendant and Counterclaimant, Appellant.**

**No. 17442.**

United States Court of Appeals Seventh Circuit.

Dec. 30, 1969.

---

8. The transaction fell through mainly because only $850,000 would have been disbursed by Heller.

Myron C. Cass, I. Irving Silverman, Herbert J. Singer, Chicago, Ill., for appellant.

Anthony R. Chiara, Carlton Hill, Richard J. Schwarz, Chicago, Ill., for appellee; Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, CUMMINGS, Circuit Judge, and DILLIN, District Judge.[1]

HASTINGS, Senior Circuit Judge.

Particle Data Laboratories, Inc.[2] brought this declaratory judgment action against Coulter Electronics, Inc.[3] It sought a declaration of invalidity and non-infringement of a Coulter patent. Coulter filed three-counterclaims alleging patent infringement, trademark infringement and unfair competition. The district court dismissed Coulter's third counterclaim and denied its motion to join Robert H. Berg as a party counterclaim defendant to its three counterclaims. Coulter appeals. We affirm.

Plaintiff Particle Data is an Illinois corporation. Robert H. Berg is its sole executive and administrative officer and owns substantially all of its capital stock. Berg operates Particle Data and a sole proprietorship, Process Control Services, from his home in Elmhurst, Illinois.

Defendant Coulter Electronics is also an Illinois corporation. Two brothers, Joseph and Wallace Coulter, are its chief executive officers and now reside outside this jurisdiction in Florida.

In 1956, Berg approached the Coulter brothers who were making and selling a device for counting blood cells known as the "Coulter Counter." He proposed an arrangement whereby he would make a study of design improvements to make the Coulter Counter more suitable for counting particles in industrial applications and would develop industrial markets for the device.

On April 1, 1957, Berg and the Coulters entered into a Sales Franchise Agreement providing for the formation of a corporation, Coulter Industrial Sales, Inc., through which Berg was to develop industrial markets for the Coulter Counter. Berg was to finance such development and was to be compensated from the sales of Coulter Counters for industrial uses. Berg was the sole administrative officer and controlling stockholder of Coulter Industrial Sales, Inc.

The Sales Franchise Agreement provided for termination at will by either party. Coulter exercised this privilege several times. On each of these occasions a new agreement was substituted for the terminated one until September 8, 1960, when Coulter terminated the agreement finally. Coulter Industrial Sales, Inc., was then dissolved.

Coulter alleges in its third counterclaim that in its final form the Sales Franchise Agreement required Berg so to perform that all good will arising from his activities would inure to the benefit of Coulter upon termination of the agreement.

1. District Judge S. Hugh Dillin is sitting by assignment from the Southern District of Indiana.

2. Since this suit was commenced, plaintiff has changed its name to Particle Data, Inc.

3. Coulter Electronics, Inc., is conceded to be the successor to a partnership doing business as Coulter Electronics which was a party to some of the early agreements involved in this appeal. "Defendant" and "Coulter" will be used to refer to both the partnership and the successor corporation.

Following the final termination of the Sales Franchise Agreement, each party accused the other of breaches of such contract. Coulter charged that Berg had appropriated its good will by operating Coulter Industrial Sales, Particle Data, and Process Control Services during the life of the Sales Franchise Agreements in such a way as to confuse customers concerning whether they were dealing with the Coulter corporation or with Berg's corporation and proprietorship. Berg charged Coulter with fraud and with failure to pay for assets transferred to it upon the dissolution of Coulter Industrial Sales, Inc.

This strife culminated in filing in the Circuit Court of Du Page County, Illinois, of Civil Action No. 1–61–141, entitled Coulter Electronics, Inc. v. Robert H. Berg, individually and doing business as Process Control Service Company; Particle Data Laboratories, Inc.; and Coulter Industrial Sales Co. Berg filed a counterclaim in that action against Wallace H. Coulter, Joseph H. Coulter, Jr., and Coulter Electronics, Inc. This suit remains pending in the state court.

After the state court suit was filed, Particle Data began purchasing used Coulter Counters which it reconditioned and sold. Due to alleged harassment by Coulter of Particle Data's customers and suppliers, Particle Data commenced the present declaratory judgment action in the federal district court against Coulter seeking a declaration of invalidity and non-infringement of the Coulter patent No. 2,656,508 covering the Coulter Counter.

Coulter filed three counterclaims in the district court: 1, for infringement of three of its patents; [4] 2, for infringement of its registered trademark "Coulter Counter"; and 3, for unfair competition by reason of breaches of the Sales Franchise Agreements discussed above.

Particle Data's answer to the counterclaims included a motion to dismiss the third counterclaim alleging, *inter alia*, that the district court lacked jurisdiction over the state cause of action for breach of contract. This motion was not brought on for hearing for nearly $3\frac{1}{2}$ years. In the meantime, considerable discovery took place, some of it with reference to the third counterclaim.

The district court initially denied the motion to dismiss on September 20, 1968. On September 27, 1968, Coulter moved to join Berg as a counterclaim defendant and Particle Data orally moved the court to reconsider its motion to dismiss the third counterclaim. On November 21, 1968, the trial court entered a Memorandum of Decision denying Coulter's motion to join Berg and granting Particle Data's motion to dismiss the third counterclaim.

Coulter contends that the district court had jurisdiction of the third counterclaim under Title 28, U.S.C.A. § 1338(b) and abused its discretion in dismissing such counterclaim.

Section 1338(b) is the statutory codification of the judicially developed doctrine of pendent jurisdiction. 80th Congress House Report No. 308 (1947). It provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws." This case, like many before it, involves the double question of whether the instant claim is a "claim of unfair competition" and whether, if it is, it is "related" to the patent and trademark claims in suit.

Because of our disposition of this appeal, we may assume, without deciding, that Coulter has properly denominated its third counterclaim as one of "unfair competition" rather than one merely of

4. Patent No. 2,656,508 covering the Coulter Counter; Patent No. 2,869,078 covering a fluid metering device designed for use with the Coulter Counter; and Patent No. 2,987,830 covering a scanner element tube, a component of the first two patented devices.

breach of contract, as Particle Data contends.

Coulter urges that its counterclaim is "related" within the meaning of Section 1338(b). The first case to bring pendent jurisdiction into prominence was Hurn v. Ousler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), wherein the Supreme Court distinguished proper from improper exercises of federal pendent jurisdiction over state law claims by contrasting "a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action*." 289 U.S. at 246, 53 S.Ct. at 589.

In United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965), the Court found this "limited approach * * * unnecessarily grudging." The Court held "pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' * * * The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.* (Footnotes omitted.)

Coulter contends that a majority of courts now support the "more liberal viewpoint" which holds two claims "related" for purposes of Section 1338(b) if they have a so-called "factual nucleus." [5]

In two pre-*Gibbs* cases, we held that to be related within the meaning of Section 1338(b) two claims must "rest upon substantially identical facts." Powder Power Tool Corp. v. Powder Actuated Tool Co., 7 Cir., 230 F.2d 409, 413 (1956); Strey v. Devine's, Inc., 7 Cir., 217 F.2d 187, 189 (1954). Both of these cases rely upon Hurn v. Ousler, *supra*.

Coulter now urges this court to adopt the "more liberal" approach followed in some other circuits. It cites our decision in Ortman v. Stanray Corp., 7 Cir., 371 F.2d 154 (1967), involving ancillary jurisdiction as pointing the way to such a result.

We find it unnecessary to reach and determine the issue Coulter now urges. Even under the "more liberal" approach advocated by Coulter, it is unable to show that the district court abused its discretion in dismissing the third counterclaim. Absent that, Coulter may not prevail on this appeal.

In *Gibbs* itself, so heavily relied upon by Coulter, the Court held that pendent jurisdiction need not and should not be exercised each time the power to exercise it exists: "That power need not be

5. Citing, *inter alia*, River Brand Rice Mills, Inc. v. General Foods Corp., 5 Cir., 334 F.2d 770, cert. den. 379 U.S. 998, 85 S.Ct. 716, 13 L.Ed.2d 700 (1964); Mach-Tronics, Inc. v. Zirpoli, 9 Cir., 316 F.2d 820 (1963); Hazel Bishop, Inc. v. Perfemme, Inc., 2 Cir., 314 F.2d 399, 5 A.L.R.3d 1031 (1965); Pursche v. Atlas Scraper and Engineering Co., 9 Cir., 300 F.2d 467, cert. den. 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1961); O'Brien v. Westinghouse Electric Corp., 3 Cir., 293 F.2d 1 (1961); Lyon v. Quality Courts United, Inc., 6 Cir., 249 F.2d 790 (1957); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538 (1956). *See also* D. Currie, The Federal Courts and the American Law Institute, (Part II), 36 U.Chi.L.Rev. 268, 281–85 (1969).

exercised in every case in which it is found to exist. *It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.* Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims * * *. We thus conclude that although it may be that the District Court might, in its sound discretion, have dismissed the state claim, the circumstances show no error in refusing to do so." 383 U.S. at 726, 729, 86 S.Ct. at 1139, 1140. (Emphasis added; footnote omitted.)

Thus, the only question for this court is whether the district court abused its discretion in refusing to exercise the jurisdiction which we may assume *arguendo* it had. "Generally, an appellate court may set aside a trial court's exercise of discretion only if the exercise of such discretion could be said to be arbitrary." Sears, Roebuck and Co. v. American Mutual Liability Insurance Co., 7 Cir., 372 F.2d 435, 438 (1967). "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967 (1942).

We do not find such arbitrary action here which would justify a reversal even under Coulter's "more liberal" interpretation of Section 1338(b). The trial court specifically took note of *Gibbs* and of the discretion it gives and concluded: "While there is some overlap among the third counterclaim and the first two, * * * overlap among the counterclaims is not considerable. * * * A hearing on the third counterclaim would inject new issues and a large amount of facts unrelated to the other portions of the case. The subject matter of the third counterclaim is not closely enough related to either of defendant's other two

counterclaims. The third counterclaim will not be proved by the evidence that will be offered on behalf of the other two. The Court is mindful of plaintiff's delay in pressing this particular motion, and that some discovery has been had relative to the third counterclaim. However, it feels that penalizing plaintiff for said delay by denying its motion would work an even greater penalty on this Court."

The events dealt with in the complaint and first and second counterclaims involve questions of patent validity and infringement under federal law. The resolution of these questions depends primarily on facts concerning the activities of the parties and the use of the patented and alleged infringing devices after 1962.

The "gist of the third counterclaim" as found by the trial court is that Berg, individually and through various corporations controlled by him, intermingled and confused the status of such corporations during the existence of the Sales Franchise Agreements. Thus, it is alleged, he established for himself and for his corporation, Particle Data, a stature, reputation and recognition in the particle analysis field based upon the merits of the Coulter equipment in violation of the provisions of the Sales Franchise Agreements. These activities all took place more than two years before the events giving rise to the pending complaint and first two counterclaims. They were largely activities of Berg and the Coulter brothers individually. None of these three is now a party to the federal litigation.

The court could reasonably have assumed that even if all three persons could have been made subject to its personal jurisdiction, their addition at this late date would only further frustrate attempts to bring this matter to trial.

A further justification for the trial court's decision appears in Particle Data's apprehension that Coulter was seeking to bring only its half of the state court suit into the federal court while leaving Particle Data to press its

state counterclaims in the state court. Such a result would have been destructive not only of fairness to the parties but of judicial economy.

In sum, we find it was not unreasonable for the district court, in its discretion, to dismiss Coulter's third counterclaim.

The district court disposed of Coulter's motion to join Berg in holding: "This motion is based primarily on the contention that Robert Berg is an indispensable party to the claims forwarded in defendant's third counterclaim. Because of its decision in the first motion discussed herein, this Court is not now faced with this issue. The Court further feels that the interests of judicial economy and fairness preclude this Court from joining Mr. Berg, at this late date, to either of defendant's remaining counterclaims." We agree.

We have considered other contentions made by Coulter and find them unpersuasive.

The order of the district court dismissing Coulter's third counterclaim and refusing to join Berg as a counterclaim defendant is affirmed.

Affirmed.