619 F.2d 660
 205 U.S.P.Q. 1157
 DUAL MANUFACTURING & ENGINEERING, INC., and the Berkline
Corporation, Plaintiffs-Appellees,
v.
BURRIS INDUSTRIES, INC., Defendant-Appellant.
LEGGETT & PLATT, INCORPORATED, Plaintiff-Appellant,
v.
DUAL MANUFACTURING & ENGINEERING, INC., Defendant-Appellee.
 No. 79-1136.
 United States Court of Appeals,
Seventh Circuit.
 Reheard En Banc Dec. 3, 1979.
Decided April 22, 1980.
 
 Herbert C. Brinkman, Cincinnati, Ohio, for defendant-appellant.
 John E. Angle, Kirkland & Ellis, Chicago, Ill., for plaintiffs-appellees.
 Before FAIRCHILD, Chief Judge, SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER, WOOD and CUDAHY, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 These are consolidated appeals from two judgments entered in consolidated patent infringement cases tried to a jury. The jury found both patents in suit to be valid and infringed. The patents related to chairs which could be reclined without striking a nearby wall. The judgment of the district court was affirmed by a divided panel of this court on July 20, 1979, on the basis that the jury's verdict was not against the manifest weight of the evidence. The dissenting opinion took the position that obviousness was a question of law, that the evidence demonstrated the patents were obvious under the prior art, that the patents should have been found invalid by the district court, and that the judgment contrary thereto should have been reversed by this court. Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc., 202 USPQ 708 (7th Cir. 1979).
 
 
 2
 By way of more specific background, we note the following. The original suit was brought by the Berkline Corporation and its subsidiary Dual Manufacturing & Engineering, Inc. (collectively, the appellees) alleging that the Wall Hugger chair manufactured by Burris Industries, Inc. (Burris) infringed two Re patents: Reissue Patent No. 28,210 and Reissue Patent No. 29,483.[1] Thereafter the predecessor in interest of Leggett & Platt, Inc. (together with Burris, collectively referred to as the appellants), which manufactures parts used in the Wall Hugger chair, brought an action seeking a declaratory judgment that the patents owned by Berkline were invalid. The second case, originally commenced in the district court for the District of Massachusetts, was transferred to the Northern District of Illinois after Dual had counterclaimed, charging infringement of both patents. The two cases thus involved the same issues with the parties reversed.
 
 
 3
 According to Berkline, Frank Re, the inventor, discerned in 1969 the problem of developing a chair that would "recline and wall" and after testing a great many models the "Wallaway" chair was developed. The essential design principle embodied in this chair was that the seat was placed on a rolling base with a linkage attaching the backrest to the base. Then as the chair occupant leaned back the seat would roll forward on the base and the back would be pulled into a reclining position by the linkage without the back touching a nearby wall. The Burris Wall Hugger chair is also designed to recline even though placed close to a wall.
 
 
 4
 Although we will leave the matter for a more thorough discussion later herein, initially we note that at least at the time of the en banc rehearing there was no serious dispute that determination of the question of obviousness under patent law is a question of law. Pederson v. Stewart-Warner Corp., 536 F.2d 1179, 1180 (7th Cir. 1976), cert. denied, 429 U.S. 985, 97 S.Ct. 505, 50 L.Ed.2d 597, and cases cited therein. The appellees, however, on the en banc rehearing have taken the position that even though it be acknowledged that obviousness is a question of law, this does not compel the conclusion that a reviewing court is free to substitute its determination on obviousness for that of the jury, "when, as here, appellants agreed to submit the question of obviousness to the jury with instructions from the trial judge that appellants could concede were proper." The appellees point out that as a matter of fact the instruction on obviousness was drafted and submitted by the appellants and given as tendered with some slight modification.
 
 
 5
 Because the jury was instructed on the elements bearing on the issue of obviousness and because some attention was directed to that matter during oral argument on the en banc rehearing, we turn first to whether or not the appellants are now precluded from contending as a matter of law that the inventions encompassed in the patents in issue were invalid because of obviousness.
 
 
 6
 We do not understand the appellees to be arguing that the appellants are bound by a waiver in the strict legal sense of that term, although they nevertheless find support for their position in the fact that the appellants did not object to submitting the issue of obviousness to the jury. The appellants, on the other hand, admit that the jury was instructed on the issue of obviousness and no objection was lodged against the instruction as required by Rule 51, Fed.R.Civ.P. They do say, however, that because the district court had declined to take the case from the jury they had no choice except to see that the jury was properly instructed on the elements of obviousness, and that they had no objection to the form of the instruction insofar as it related to those elements. They also say, as they must, that they are not seeking reversal on the ground of erroneous instructions.
 
 
 7
 As the factual background for consideration of this initial issue the record demonstrates the following. At the conclusion of the appellants' evidence, the appellees moved for a directed verdict. The oral motion which was briefly argued to the trial court and was quickly denied, raised a number of issues not involved in the present appeal. It also raised the question of the validity of the patent for noncompliance, inter alia, with the provisions of 35 U.S.C. § 103, the statutory basis for nonobviousness precluding a patent.[2] Because at the time the initial motion for directed verdict was presented the appellants had not yet presented any evidence and had only had the opportunity to cross-examine the appellees' witnesses, we may safely assume without reading the some thirteen volumes of transcript developed to that point, that it would have been inappropriate to have directed a verdict. At the conclusion of all the evidence, the appellants again moved for a directed verdict, arguing "that the only reasonable conclusion that can be drawn from the evidence in this case is that at the time that Re made his chair, it would have been obvious to someone skilled in the art." Their argument, although not extended, pointed out reference to a much older Hendrickson chair and that the patents in issue were merely a combination of old elements and that they were "a pure cut-and-paste job." Specifically they pointed out to the court that the recliner chair was old and when this was put with the old slide and link the previous functions were merely combined. Again the court promptly overruled the motion for a directed verdict.
 
 
 8
 Thereafter the appellants in due course filed their motion for a judgment notwithstanding the verdict. In their brief supporting this motion the movants specifically directed the attention of the trial court to Pederson and other cases to the effect that obviousness is a question of law and that judgment n. o. v. was proper in a jury-tried case where the patent in suit was directed to an obvious combination of old elements. The brief then extensively set forth an analysis of the evidence with particular regard to that which was shown by the prior art.[3] This motion was also denied.
 
 
 9
 Under the circumstances just set forth we hold that the question of obviousness is preserved for review by this court. This issue was presented in Coca Cola Bottling Co. of Black Hills v. Hubbard, 203 F.2d 859 (8th Cir. 1953). In that case the plaintiff asserted that because no exceptions were taken to the instructions of the trial court, those instructions became the law of the case for determining the sufficiency of the evidence to support the verdict in judgment. The court rejected this contention, expressly overruling earlier cases to the contrary, and stated the following:
 
 
 10
 It is true, of course, that an appellant may not challenge on review the correctness of instructions to which he took no exceptions or only a general exception. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 and cases cited; Palmer v. Miller, 8 Cir., 145 F.2d 926, 930. In that sense, and in that sense only, it may be said that the instructions to which no exceptions are taken become the law of the case for determining whether the instructions are subject to review on appeal. See Union Pacific Railroad Co. v. Denver-Chicago Trucking Co., Inc., 8 Cir., 202 F.2d 31, 37-38. But in determining whether a trial court has erred in denying a motion for a directed verdict made at the close of the evidence, it is the applicable law which is controlling, and not what the trial court announces the law to be in his instructions. This Court must ascertain for itself what the applicable law is, whether the instructions were excepted to or not. A proper motion for a directed verdict and its denial will always preserve for review the question whether under the law truly applicable to the case there was an adequate evidentiary basis for the submission of the case to the jury.
 
 
 11
 203 F.2d at 862. See also Johnson v. United States, 434 F.2d 340, 343 (8th Cir. 1970) (citing Coca Cola with approval); Gorsalitz v. Olin Mathieson Chemical Corporation, 429 F.2d 1033, 1040 (5th Cir. 1970), cert. denied, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972) (holding that the question was preserved for review by the motion for a directed verdict).
 
 
 12
 In 9 Wright & Miller, Federal Practice and Procedure: Civil P 2558 at 670-71 (1971), the controlling law in the discussion of appellate review is succinctly put as follows:
 
 
 13
 Many decisions say that an instruction not objected to becomes the law of the case. This may be merely one way of phrasing the general principle that failure to object ordinarily bars later challenge to an instruction. It appears to have no meaning beyond that.
 
 
 14
 (Footnotes omitted.)
 
 
 15
 Returning to the proposition of law originally adverted to in this opinion that obviousness is a question of law, we see little reason for extending the discussion too much beyond the clear statement in Pederson, supra, other than to observe as applicable to the present issue, that this court has never felt it was bound by a determination of nonobviousness at the trial court level resulting in validity even where that finding had been made by a district court judge, whose expertise in the subject presumably would be well above that possessed by a lay jury. See, e. g., Skil Corporation v. Lucerne Products, Inc., 503 F.2d 745 (7th Cir. 1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975); Panduit Corporation v. Burndy Corporation, 517 F.2d 535 (7th Cir. 1975), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304; Gettelman Mfg. Inc. v. Lawn 'N' Sport Power Mower Sales & Service, Inc., 517 F.2d 1194 (7th Cir. 1975); and Burland v. Trippe Mfg. Co., 543 F.2d 588 (7th Cir. 1976).
 
 
 16
 The appellees on rehearing en banc relied extensively albeit selectively, on Panther Pumps & Equipment Co. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972), a case in which the issue of obviousness had been submitted to a jury which had returned a verdict that the patents were valid. The appellees assert that this court affirmed the jury verdict and made no effort whatsoever independently to examine or determine obviousness. We regard the reliance on Panther Pumps as misplaced. Panther Pumps itself makes it clear that the law of this circuit, following Armour & Co. v. Wilson & Co., 274 F.2d 143, 151-157 (7th Cir. 1960), is that the issue of obviousness is a question of law. Id. at 227. This was not disputed in Panther Pumps. The holding in that case insofar as it is germane to the present case is that if the resolution of the issue of obviousness, although a question of law, turns upon disputed factual questions, then a general verdict of validity will be taken as a decision that the disputed factual questions had been resolved favorably to the party in whose favor the verdict was returned. See Pederson, supra, 536 F.2d at 1180. Indeed Panther Pumps itself states that if there are no disputed fact issues affecting validity, the court may simply instruct the jury that the patent is either valid or invalid. Panther Pumps, supra, 468 F.2d at 228 n.8. In Panther Pumps the defendants did not argue that it was error to submit either the entire case or any specific issue to the jury nor did they contend that the jury was permitted improperly to decide questions of law. Rather, the thrust of the contention in that case was that the trial court erred as a matter of law or at least abused its discretion by refusing to submit thirty-two special interrogatories to the jury. Under these circumstances this court found no error in the procedure followed by the trial judge in submitting the case to the jury. Inasmuch as the trial judge was not required as a matter of law to submit special interrogatories, the court held he did not abuse his discretion in refusing to do so.
 
 
 17
 The present appellees attempt to buttress their position with regard to Panther Pumps by stating that one of the grounds listed in the petition for a writ of certiorari in the Supreme Court was whether a court of appeals can decline judicially to review a legal conclusion on patent validity when the conclusion was made by a jury rather than by a trial judge. Aside from well-established law that the denial of a petition for certiorari is no indication of the position of the Supreme Court on any issue presented in the petition, this particular reason listed in the petition was not an issue in the Panther Pumps case in this court. There is no indication in the opinion of this court that any effort was made on the part of the defendant to show that there were no disputed subsidiary fact questions. As this court said: "In such event, as in other cases tried by a jury, the reviewing court will presume that the disputed matters of fact have been resolved favorably to the prevailing party in accordance with the trial judge's instructions." Id., 468 F.2d at 228. The matter of lack of disputed questions of fact in the present case will be discussed subsequently.
 
 
 18
 On the present issue, the appellees also rely upon a recent case in the Fifth Circuit, Control Components, Inc. v. Valtek, Inc., 609 F.2d 763 (5th Cir. 1980). This case does not contradict or disagree with the position taken in Panther Pumps. The Fifth Circuit made it clear that a preliminary factual determination is to be made on the scope and content of the prior art and on the difference between the prior art and the claims at issue, but that when these factual determinations are made the trial judge determines as a matter of law whether the improvement would have been obvious at the time of the invention to a person having ordinary skill in the art. The court also observed that the legal conclusion is fully reviewable by the appellate court. The difficulty in Control Components as in Panther Pumps was that there were disputed subsidiary facts and a general verdict. Under these circumstances the court presumed that the disputed matters of facts had been resolved favorably to the prevailing party, citing Panther Pumps. As the concurring opinion of Judge Rubin pointed out, id. at 775, because the trial judge in addressing the motion for a judgment notwithstanding the verdict necessarily considered and rejected the contention that the invention was obvious as a matter of law, and because the majority opinion demonstrated there was adequate evidence in the record to support the conclusion of obviousness, he joined the majority in holding that the patent was valid.
 
 
 19
 Under these authorities it is clear that if subsidiary facts are determined after a dispute with regard thereto, the court must then decide the issue of nonobviousness. Before analyzing the record in the present case on the matter of whether there were any of the preliminary or subsidiary facts in dispute we must first consider some other preliminary matters reflecting upon the ultimate decision.
 
 
 20
 These preliminary matters are outlined in Republic Industries, Inc. v. Schlage Lock Co., 592 F.2d 963, 972-73 (7th Cir. 1979), and we adopt here what this court said there:
 
 
 21
 We begin this analysis by noting that a patent is presumed valid. 35 U.S.C. § 282. That presumption, however, is not conclusive, St. Regis Paper Co. v. Bemis Co., 549 F.2d 833, 838 (7th Cir.), cert. denied, 434 U.S. 833, 98 S.Ct. 119, 54 L.Ed.2d 94 (1977); it merely shifts the burden of proof to the party attacking the validity of the patent. Maxon Premix Burner Co. v. Eclipse Fuel Engineering Co., 471 F.2d 308, 312 (7th Cir. 1972), cert. denied, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 591 (1973). Furthermore, that presumption does not exist against evidence of prior art not before the Patent Office. The Allen Group v. Nu-Star, Inc., 575 F.2d 146 (7th Cir. 1978) (per curiam); Ropat Corp. v. McGraw Edison Co., 535 F.2d 378, 383 (7th Cir. 1976). "Even one prior art reference not considered by the Patent Office can suffice to overthrow the presumption." Henry Manufacturing Co. v. Commercial Filters Corp., 489 F.2d 1008, 1013 (7th Cir. 1972).
 
 
 22
 In applying this applicable law to the present situation, we note the appellants state that in considering the Re patents the Patent Office did not consider several pertinent items of prior art patents and publications, including Stark Patent No. 370,095, Karpin Patent No. 632,053, Englander Patent No. 1,061,533, and Vorher German Patent No. 831,009. According to the appellants each of these patents was directed to a movable piece of close-to-the-wall household furniture, and show that it was old to use the combination of a propeller link, fixed base, and sliding chassis to construct an article of furniture which could be placed to a wall and reclined without having the back hit the wall. The appellees answer this contention by stating that although these other patents were not listed on the face of the patents in suit there was no basis for the assertion that this body of art was not considered by the examiner. It is further asserted that the examiner did conduct exhaustive searches and that it is just as likely as not that he did review these patents and concluded that they were not particularly relevant. It appears to us that the other patents do have some relevance and under that circumstance we can give very little weight to the presumption of validity in this case.
 
 
 23
 Having reached this point we see little purpose in launching into an extended technical dissertation on the prior art. We regard it as sufficient that the record reflects prior art falling into two distinct categories. The first category includes prior art showing the basic reclining chair without a propelling mechanism. The second category of prior art shows the propelling mechanism for shifting a chair back away from the wall. Indeed, in the original brief in this court the appellees conceded the situation with regard to the prior art when they said:
 
 
 24
 Defendants stress the fact that the components of the Re chair are old and perform no new function. Plaintiffs freely admit that the individual components are old and that each functions, in isolation, as it always has.
 
 
 25
 We hasten to add that we in no way mean to suggest that there cannot be an invention qualifying for patent status in a combination of old elements. To say this would have eliminated many valid patents in the past and certainly many more in the future. What we have here, however, is not a combination of various old elements such as screws, nuts, bolts, levers, cog wheels and so forth, but very simply, the direct combination of two well known mechanical procedures, both of which were in the prior art. Even before Graham v. John Deere Co., 383 U.S. 1, 83 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court in Great A & P Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152-53, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950) laid down the dispositive test for the situation involved in the present litigation:Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly.
 
 
 26
 That this analysis is still valid law is indicated by the later case of Sakraida v. Ag Pro, Inc., supra, 425 U.S. at 282, 96 S.Ct. at 1537, which cites Great A & P in connection with a determination of invalidity of a patent which, according to the Court, "simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations." The Court observed that "(s) uch combinations are not patentable under standards appropriate for a combination patent."
 
 
 27
 The preliminary or subsidiary questions of fact as originally outlined in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), are:
 
 
 28
 Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.
 
 
 29
 We have noted that the subsidiary fact of the scope and content of the prior art does not present a factual dispute in this case, nor has it been established that there is any particular disputed factual determination with regard to the differences between the prior art and the claims at issue. The only remaining factor is the level of ordinary skill and the pertinent art. If we accept arguendo the contention of the appellees that the level of ordinary skill in the art of reclining chair design consists of people who have no formal engineering education, who have been either carpenters, mechanics, or tool-and-die maker type people who, by experience in the business, have built up their knowledge, the prior art in the present case shows that the combination achieved here is nothing more than "the work of the skilful mechanic, not that of the inventor."[4] Sakaraida, supra, 425 U.S. at 282, 96 S.Ct. at 1537 (quoting Hotchkiss v. Greenwood, 11 How., 248 at 267, 13 L.Ed. 683).
 
 
 30
 The appellees also contend on appeal that the Re invention enjoyed great commercial success and that the Wallaway type of chair had been widely accepted in the furniture industry. As a matter of no surprise, the appellants argue vigorously that there was no commercial success shown to be attributable to any patent features of the Re chair, and that there was not in fact any such long felt want. Irrespective of the correctness of the two positions the secondary considerations are of no avail to the appellees in the present case. The words of the Supreme Court in Anderson's Black-Rock, supra, 396 U.S. at 61, 90 S.Ct. at 308, are appropriate:
 
 
 31
 It is, however, fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters "without invention will not make patentability."(Citing Great A & P Tea Co., 340 U.S. at 153, 71 S.Ct. at 130). See also Republic Industries, Inc., supra, 592 F.2d at 975-76.
 
 
 32
 In sum, this record presents a case in which there is only left for the reviewing court the matter of determining as a question of law whether the patents were obvious under prior art. We hold that they were and therefore were invalid.
 
 
 33
 In considering this case we feel compelled to remark that it is an excellent illustration of the wisdom of this court's observation that "members of the Patent Bar have wisely avoided jury trials in patent litigation."[5] A persuasive clue as to the jury's misunderstanding of what was involved in this case is provided by the fact that the jury found infringement by a chair which everyone agrees did not infringe. We do, because of the troublesome questions which seem to arise frequently where a complex patent case is submitted to a jury of lay people, think, under our supervisory power, that it is appropriate to make the following observations on the use of special verdicts in patent cases when the issue is obviousness.
 
 
 34
 Because only issues of fact subsidiary to the legal question of obviousness are within the province of the jury, its resolution of those issues of fact should ordinarily be articulated in special verdicts under Rule 49(a), Fed.R.Civ.P.[6] The same result may be achieved by special interrogatories returned with a general verdict under Rule 49(b), a device primarily designed to test the jury's application of the law in reaching a general verdict, see 5A J. Moore, Federal Practice P 49.04 (2d ed. 1979). When the issue is obviousness, a general verdict, with or without answers to special interrogatories, will ordinarily serve no purpose, because the court will still have the responsibility of deciding obviousness.[7] A general verdict, without more, will of course give rise to the presumption that material fact issues have been resolved in favor of the prevailing party; but specific findings are more likely to be useful than presumptions to a court exercising its obligation to decide the ultimate issue of obviousness.
 
 
 35
 It must be recognized, of course, that at best special verdicts will help some; they will not make trial by jury an effective way of resolving the issue of obviousness. Their limitations are suggested by the provision of Rule 49(a) that in taking special verdicts "the court may submit written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and the evidence." It is true that the rule goes on to say that, alternatively, the court "may use such other methods of submitting the issues and requiring the written findings thereon as it deems most appropriate." It is apparent, however, that the draftsmen recognized the lack of flexibility that is inevitable when the fact finder responsible for resolving complex and detailed fact issues cannot be expected to compose detailed findings. Nevertheless, the special verdict device may allow the jury, if one is utilized, to serve a useful function in resolving specific contested issues as to the concrete facts, and it should be used.
 
 
 36
 For the reasons hereinbefore set out, the judgment of the district court is REVERSED. Costs shall be awarded to the appellants.
 
 
 37
 SPRECHER, Circuit Judge, dissenting.
 
 
 38
 I dissent on the basis set forth in the panel's original decision in Dual Manufacturing & Engineering Industries, Inc., 202 USPQ 708 (7th Cir. 1979).
 
 
 39
 I would affirm the judgment of the district court.
 
 
 
 [1]
 The original complaint specified Patent No. 3,758,151, which was later reissued as Reissue No. 28,210, the complaint being amended to reflect that change. A supplemental complaint included a charge of infringement of Patent No. 3,874,724. When that patent was reissued as Reissue No. 29,483, a third and final complaint was filed
 
 
 [2]
 35 U.S.C. § 103 reads as follows:
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
 
 
 [3]
 In their brief supporting the motion for judgment notwithstanding the verdict in the district court, the appellants also contended that there was no synergistic effect producing a result greater than the sum of the parts, and that under Seventh Circuit authority and two Supreme Court cases believed to be supportive (Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969) and Sakraida v. Ag Pro, Inc., 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)) the lack of the synergistic effect precluded patentability. Subsequent to the judgment in the present case, this court in Republic Industries, Inc. v. Schlage Lock Co., 592 F.2d 963 (7th Cir. 1979) made it clear that synergism is not the sine qua non of patentability but rather that the analysis of Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) will be the exclusive means by which to measure nonobviousness under 35 U.S.C. § 103. This court stated that the concept of synergism was employed only as a figure of speech to express the truism that "when all the parts of a claimed invention are known, the combination (and the act of combining) is likely to be more obvious to one reasonably skilled in the art." 592 F.2d at 972
 
 
 [4]
 We also note that the appellees called an expert witness who testified that the design of the Wallaway chair was not obvious. At this point, however, we cannot treat the witness as testifying as an expert witness on a disputed factual matter for he was giving an opinion on the ultimate legal question for decision, that of obviousness. As this court said in Pederson, supra, 536 F.2d at 1180:
 Because obviousness is a question of law, opinions of experts on that question are not among the facts presumptively decided in the winning party's favor . . . .
 
 
 [5]
 Panther Pumps & Equipment Co. v. Hydrocraft, Inc., 468 F.2d 225, 228 n. 9 (7th Cir. 1972), cert. denied, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973)
 
 
 [6]
 Special verdict forms were submitted and answered in the present case but they amounted to little more than a general verdict as they only were directed to whether the patents were valid and, if so, whether they were infringed. The validity issue, of course, included the matter of obviousness, a question of law. Special verdicts should be concerned only with questions of fact
 
 
 [7]
 Compare 5A J. Moore, Federal Practice § 49.05, discussing the virtues of special verdicts and interrogatories as compared with general verdicts, and disagreeing with the views of Judge Jerome Frank expressed in Skidmore v. Baltimore & Ohio Railroad, 167 F.2d 54 (2d Cir. 1948). Judge Frank favored making either special verdicts or written interrogatories compulsory in civil cases. Professor Moore disagrees