**The PATE COMPANY, an Illinois corporation, Plaintiff-Appellee, Cross-Appellant,**

v.

**RPS CORPORATION, a corporation, and Raymond W. Resech, individually, Defendants-Appellants, Cross-Appellees.**

Nos. 81–1959, 82–1127.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1982.

Decided July 23, 1982.

Rehearing and Rehearing En Banc Denied Aug. 20, 1982.

John C. Brezina, Brezina & Buckingham, Chicago, Ill., for defendants-appellants, cross-appellees.

Irwin C. Alter, Alter & Weiss, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before BAUER and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

RPS Corporation and Raymond W. Resech have appealed a judgment finding that United States Patent No. 3,807,110, owned by The Pate Company, is valid and was infringed by an RPS product, and awarding treble damages for the infringement. Pate has cross-appealed the court's dismissal and judgment n.o.v. on Pate's unfair competition claims. We reverse on the patent issues and affirm dismissal of the unfair competition claims.

### I. Factual Background

Patent No. 3,807,110 ("'110"), entitled "Multipurpose Roof Penetrating Curb," was issued on April 30, 1974 to Cyril John Kaminski as inventor, and Pate Manufacturing Co. as assignee. The patent application had been filed on November 8, 1972. The patent covers a "roof curb" assembly, which is designed to support devices such as fans, ventilators and air conditioners mounted on the roof of a building, and to provide a

* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

waterproof seal around pipes and electrical conduits leading to those devices.[1]

For many years the waterproof seal around such pipes and conduits has been achieved by means of "pitch pockets," which are created by placing a metal cylindrical wall around the joint and filling the space with melted pitch, tar, or asphalt. Unfortunately, those fillers tend to contract and crack with age, thus allowing leaks to develop in the roof.

The '110 patent eliminates the use and disadvantages of pitch pockets by substituting a flexible rubber boot "having a first vertical section contiguous to the outer periphery of [the] pipe and a second vertical section contiguous to [the] upstanding cylindrical section" surrounding the hole. Claim 1. In simple terms, the boot is a rubber tube with differing diameters at both ends, one matching the protruding pipe and the other matching and fitting over the cylindrical collar surrounding the hole in the roof curb cover.[2]

Claim 3 describes a boot "having a generally stepped pyramidal shape wherein each of the steps is generally cylindrical and integrally joined to adjacent members." Claim 4 describes that same stepped boot which "is cut in the circumferential plane of at least one of said cylindrical members to fit the inside diameter of said boot to the outside diameter of said pipe." In effect, these claims provide for a boot which may be custom fitted to a variety of pipes simply by cutting away the upper, smaller cylindrical sections of the "pyramid."

Pate claims that the boots described in Claims 1, 3 and 4 of the '110 patent (the "Kaminski-Pate boot") provide two improvements over pitch pockets. First, they provide a superior seal which is easier to install and does not fail with time. Second, the "stepped" boot has universal application, that is, it can accommodate many different types and diameters of pipes.

Prior to 1972, Resech had served as sales manager and president of Pate and was on its board of directors. Resech testified that he was aware of the development of the Pate roof curb system while he was an officer and board member of Pate; that he served on a committee responsible for the development and review of such new products; and that he considered himself the originator of this product.

Resech resigned from Pate in October of 1972 and in 1973 founded RPS, which manufactured and sold a similar roof curb system. He admitted at trial that he hired Pate employees to work at RPS despite the fact that he knew that most of them, like he, had signed an agreement with Pate not to commit unfair competition. One Pate employee testified that Resech had told him that he would put Pate out of business by hiring all of its experienced employees. It was shown that RPS copied Pate's sales literature and used Pate's former employees to sell RPS products to former Pate customers. It was also shown that the sales literature advertising the RPS roof curb system bore the notation "Patent Pending" prior to the filing of a patent application and subsequent to its abandonment.

## II. Proceedings in District Court

Shortly after the '110 patent was issued in 1974, Pate brought suit against RPS and Resech for patent infringement and unfair competition. Four of Pate's unfair competition claims (breach of covenant not to compete, misuse of confidential information, interference with employment contrac-

---

1. The basic element of a roof curb is a four-sided box-like structure, having no top or bottom, which is mounted above and around a hole in the roof. A waterproof seal between the curb and the roof is accomplished by means of roofing paper which is nailed and pasted on both surfaces. Roof curb covers are generally flat on the top with sides extending downward over the uppermost portion of the roof curb. One or more openings are cut in the covers to allow passage of air (for ventilators) or pipes, cables,

or conduits in connection with other exterior devices. A cylindrical collar is generally mounted around each opening on its exterior side. The parties agree that all of these elements were commonly used in the trade prior to issuance of the '110 patent.

2. Claim 5 of the '110 patent provides for the additional use of strap clamps at both ends of the boot to further insure a leakproof seal.

tual relationship, and refusal to assign patent application) were dismissed for lack of pendent jurisdiction under 28 U.S.C. § 1338(b). *Pate Co. v. RPS Corp.*, 79 F.R.D. 356 (N.D.Ill.1978). The court refused to grant defendants' motion for summary judgment on the final non-patent issue, misappropriation of the application leading to the patent in suit. The trial was bifurcated, with the issues of liability tried first, and the issues of damages in a second trial.

Despite the dismissal of the four non-patent claims, the court allowed the introduction of certain evidence relating to unfair competition on the ground that "evidence of [defendants'] conduct may remain relevant for the purposes of supporting Plaintiff's allegations that the Defendant willfully and deliberately infringed on the patent in suit." [3]

On the day the case on liability was to go to the jury, Pate's counsel presented an instruction on the dismissed unfair competition issues. The court accepted this instruction, with minor modifications, over defendants' objection. After the jury returned a verdict finding liability on the previously dismissed issues, the court allowed the filing of a second amended complaint which had been submitted, but not accepted, prior to trial and which included all five unfair competition claims.

In the trial on liability the jury returned a verdict finding the patent to be valid and willfully and wantonly infringed, with a recommendation that treble damages be assessed for the infringement. The jury found further that unfair competition had been committed with malice and willfulness and recommended the assessment of punitive damages. In the trial on damages the jury returned a verdict awarding Pate $83,-406 for infringement, trebled to $333,624,[4] $346,121 for unfair competition, and $67,974 punitive damages.

Defendants moved for a judgment n.o.v. on the unfair competition issues and a new trial on the issue of damages. The court granted judgment n.o.v. on the unfair competition claims, concluding that the evidence presented at trial did not prove misappropriation of patent application.[5] In so doing, the court impliedly reinstated its original order dismissing the other four unfair competition claims.

Pursuant to *Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.*, 619 F.2d 660 (7th Cir.) (en banc), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980), and Fed.R.Civ.P. 52(a), the court entered its own findings and conclusions on the questions of patent validity and also found for Pate. Because of insufficiencies in the damages proof, however, the court conditioned its denial of a new trial on Pate's acceptance of a remittitur of 25% on the damages award, reducing the patent infringement damages "when trebled, to $250,218.00." Pate accepted. Subsequently the award was reduced further to $187,-663.00 to correct the error in trebling the damages. (See note 4, *supra*).

---

**3.** The district court denied defendants' motion in limine to exclude evidence pertaining to the dismissed issues. Evidence on those issues was admitted at trial over defendants' repeated objections that it was irrelevant and was related to dismissed issues.

**4.** This in effect quadrupled rather than trebled the award of $83,406.

**5.** In granting defendants' motion for a judgment n. o. v. on Pate's application misappropriation claim, the court concluded that the "evidence, even when viewed in a light most favorable to Pate, was not adequate under a preponderance of the evidence standard to establish that defendants RPS and/or Resech knew of the existence or physical location of Pate's application for the patent in suit. Further, and

even more importantly, however, the plaintiff failed to show that the defendants ever appropriated, much less misappropriated, that document or its contents."

The court noted, however, that, "Evidence was presented at trial which might have allowed the jury to conclude that the defendants herein committed acts of unfair competition." The court concluded, however, that "this evidence could support a finding of liability only if the exposure of defendants RPS and Resech had been for those claims of unfair competition dismissed previously. This is so because the evidence presented was not sufficient to support a finding that the defendants misappropriated the plaintiff's *application* for the patent in suit." (Footnote omitted.)

### III. *Contentions of Parties*

Appellants contend that the '110 patent is invalid for obviousness and overclaiming; that the evidence does not support a finding of infringement; that the infringement damages award is not supported by the evidence; that the court abused its discretion in allowing treble damages; but that the court was correct in granting judgment n. o. v. on the unfair competition issues. Pate contends that the district court properly found the patent valid and infringed and urges this court to reinstate the unfair competition claims and the damages award thereon.

### IV. *Validity of Patent*

#### A. *Test of Obviousness*

In § 103 of the Patent Act of 1950, 35 U.S.C. § 103, Congress added the statutory test of obviousness as a condition of patentability.[6] In construing § 103 in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), the Supreme Court held:

> While the ultimate question of patent validity is one of law[7] ... the § 103 condition ... lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.[8]

The test of obviousness must, of course, be considered in the light of well established general rules, which were summarized by this court in *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 972–73 (7th Cir. 1979):

> We begin this analysis by noting that a patent is presumed valid. 35 U.S.C. § 282. That presumption, however, is not conclusive (Citation omitted); it merely shifts the burden of proof to the party attacking the validity of the patent. (Citation omitted). Furthermore, that presumption does not exist against evidence of prior art not before the Patent Office. (Citations omitted). "Even one prior art reference not considered by the Patent Office can suffice to overthrow the presumption." *Henry Manufacturing Co. v. Commercial Filters Corp.*, 489 F.2d 1008, 1013 (7th Cir. 1972).

The foregoing analysis was reaffirmed in *Dual Manufacturing, supra*, 619 F.2d at 665.[9] In that case we also recognized that

> a preliminary factual determination is to be made on the scope and content of the prior art and on the difference between the prior art and the claims at issue, but that when these factual determinations are made the trial judge determines as a matter of law whether the improvement would have been obvious at the time of the invention to a person having ordinary skill in the art.

---

**6.** § 103 provides:

" 103. Conditions for patentability; non-obvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**7.** Citing *A. & P. Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155, 71 S.Ct. 127, 131, 95 L.Ed. 162 (1940).

**8.** The Court noted further: "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." 383 U.S. at 17–18, 86 S.Ct. at 693–694.

**9.** In *Dual Manufacturing*, this court, in reversing the district court, held that patents relating to chairs which could be reclined without striking nearby walls were, as a matter of law, void for obviousness under prior art.

It was recognized also that "the legal conclusion is fully reviewable by the appellate court." *Id.* at 664.[10]

We turn now to an application of these principles to the facts in this case.

### B. *Was the Kaminski-Pate Patent Invalid for Obviousness?*

The district court found that the "Jenn and Gustafson patents [U.S. Patent No. 3,110,357 and U.S. Patent No. 3,677,576, respectively] presented by the defendants, although not cited by the Patent Office, qualify as and must be considered prior art." The court also found, however, that the "Jenn and Gustafson patents are not as relevant to the claims made in the Kaminski-Pate patent as was the Malissa patent [U.S. Patent No. 3,521,414], which was cited and considered by the Patent Office." We cannot agree.

The Malissa patent describes a "one piece, molded plastic base for mounting ventilators, skylights, trap doors and the like in a weatherproof manner on the roof of a building . . . ." Malissa patent at 1. Essentially, it describes a roof curb without either a cover or any means to seal around protruding pipes. In contrast, the Jenn patent describes a roof curb and cover, including an "upstanding annular flange [collar] in vertical alignment with [the] opening [in

the cover]." Jenn patent at 2. The Gustafson patent claims a rubber boot for sealing around pipes, an element entirely absent from the Malissa patent. Moreover, the Gustafson boot conforms closely to the boot described in claim 1 of the '110 patent.[11]

The district court recognized that roof curbs and covers existed as prior art and that the "invention embodied in the Kaminski-Pate patent was a rubber boot . . . ."[12] The validity of the '110 patent accordingly depends upon whether the Kaminski-Pate boot represents a patentable device.

■ In resolving this question we find the Elwart patent, which was cited as a reference in the Kaminski-Pate patent but not mentioned by the district court, even more relevant than the Gustafson patent.[13] The Elwart patent (U.S. Patent No. 3,602,530) contains most if not all of the major elements of the Kaminski-Pate boot, including its ability to be cut so as to accommodate pipes of varying diameters. The abstract of the Elwart patent reads in part:

ABSTRACT: A flashing for roof vent pipes and the like in which a shield member surrounds the vent pipe and has a base flange engaging in the rooftop surface and an upper edge provided with a plurality of concentric inner rims selectively diametered to fit varying pipe sizes, the inner rim being readily severed

---

10. "[I]f the resolution of the issue of obviousness, although a question of law, turns upon disputed factual questions, then a general verdict of validity will be taken as a decision that the disputed factual questions had been resolved favorably to the party in whose favor the verdict was returned." *Dual Manufacturing*, 619 F.2d at 664.

11. Claim 1 of the Gustafson patent reads in relevant part:
    "[A] roof flange unit comprising a flange base for sealing with a roof and a resilient elastomeric collar . . . for gripping and sealing to the periphery of a pipe of given standard size extending through the roof. . . ."

12. Finding (8) reads:
    The invention embodied in the Kaminski-Pate patent was a rubber boot composed of pyramidal sections which could be easily severed to accommodate a wide variety of standard pipe sizes. When combined with the other elements of prior art disclosed in Ka-

minski-Pate, all of which were necessary for the invention to function, this boot allowed for a large number of pipe sizes to be accommodated by the single Pate·product. No device having such a universality of application was available in the roofing products industry prior to the development of the Pate product. This universality in application also was not taught or suggested in any of the other relevant prior art.

13. Since the Elwart patent was cited, evidence of prior art disclosed by the Jenn and Gustafson patents does not in itself overthrow the presumption of validity. Although the burden of proving the invalidity of the '110 patent remains on the defendants, this court may consider all of the items of prior art found in the record on review, including the Jenn and Gustafson patents. *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 150–51 n. 6 (7th Cir. 1976).

so that the outer rim will fit the larger pipe, the flashing being made of a material which will deform to a degree, to conform with the shape of the pipe including minor imperfections thereof and to retain such conforming shape thereafter.[14]

The only difference between the Elwart and Kaminski-Pate patents is that the Elwart boot, which is intended to seal pipes through slanted roofs, is designed so that its base may be flashed under the shingles or roofing materials of the roof rather than being fitted over an upright collar. The collar arrangement of the Kaminski-Pate patent, however, is predicted by the Gustafson patent.[15]

Elwart taken with Gustafson teaches the use of a flexible boot used in sealing pipes going through roofs, having a lower cylindrical portion fitting over a collar protruding from a roof or the cover of a roof curb and an upper portion having a plurality of steps adaptable to be cut to fit a pipe of a particular size. Thus, all of the elements of the '110 patent are predicted by the elements found in the Jenn and Malissa *curb* patents and the Gustafson and Elwart *boot* patents.

■ A claim of nonobviousness resting on a new combination of old elements "must pass a 'rather severe test' consonant with the difficulty and improbability of finding invention in an assembly of old elements." *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 150 (7th Cir.

1976). A determination by an appellate court of whether, as a matter of law, an invention is obvious "invokes a three-step consideration: first, whether each element of the invention is obvious; second, if so, whether the combination is obvious; and third, if the combination seems obvious in itself, whether the rejection of the contrary teaching in the prior art requires a different conclusion." *E–T Industries, Inc. v. Whittacker Corp.*, 523 F.2d 636, 641 (7th Cir. 1975), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Airtex Corp., supra*, 563 F.2d at 150. The '110 patent fails all three considerations. First, each of its essential elements was taught by the prior art. Second, when viewed in light of prior art, the combination is obvious in itself. Finally, we find no contrary teaching in the prior art which requires a different conclusion.

■ We conclude that the '110 patent was an obvious combination of prior art and invalid within the meaning of 35 U.S.C. § 103. Accordingly we reverse the findings of the district court that the patent was valid and infringed. Having reached this conclusion it is unnecessary to consider the issues of overclaiming infringement and damages.

## V. *Unfair Competition*

28 U.S.C. § 1338(b) grants federal district courts jurisdiction over unfair competition claims" when joined with a substantial and related claim under ... patent ... laws."[16]

---

14. The inventor's summary of the invention reads:

My invention has for its primary object the formation of a vent pipe flashing which is readily adaptable to various pipe sizes, the flashing having a plurality of and preferably two, substantially concentric rims, such that the innermost rim may be readily severed from the flashing to expose the outermost rim, and with the rims so constructed to form a satisfactory seal around the periphery of the vent pipe even when same has minor imperfections. The present flashing also has the capability of conforming readily to varying roof pitches and adapting to expansion and contraction of roof structures, and may be made large enough to enclose pipes and their existing flashings if necessary.

15. As set forth above, while the Elwart and Malissa patents were cited as references, the Jenn and Gustafson patents, properly found by the district court to be prior art, were not considered by the Patent Office.

16. Appellants, cross-appellees, argue that this court has no jurisdiction in connection with Pate's appeal on the unfair competition issues. The district court's judgment n. o. v. was entered on these issues on May 26, 1981. This court accepted the appeal filed seven months late on the basis of the district court's ex parte determination on January 28, 1982, that Pate's notice of appeal should be accepted *nunc pro tunc* as of June 29, 1981. The district judge's determination was based on the fact that "[t]he original notice of appeal was inadvertently re-

As was the case in *Particle Data Laboratories, Inc. v. Coulter Electronics, Inc.*, 420 F.2d 1174 (7th Cir. 1969), we are urged to adopt "the 'more liberal viewpoint' which holds two claims 'related' for purposes of Section 1338(b) if they have a so-called 'factual nucleus.'" *Id.* at 1177 (Footnote omitted.); See *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965); *Cf. Powder Power Tool Corp. v. Powder Actuated Tool Co.,* 230 F.2d 409, 413 (7th Cir. 1956) (Related claims must "rest upon substantially identical facts."); *Strey v. Devine's, Inc.,* 217 F.2d 187, 189 (7th Cir. 1954). As in *Particle Data,* we find it unnecessary to reach and determine this issue.

Regardless of which factual relationship is required to justify pendent jurisdiction, the Supreme Court has consistently "recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Particle Data,* 420 F.2d at 1178. "Thus the only question before this court is whether the district court abused its· discretion in refusing to exercise [pendent] jurisdiction...." *Particle Data, id.* "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' *Delno v. Market St. Ry. Co.,* 9 Cir., 124 F.2d 965, 967 (1942)." *Id.*

▪ After discussing the standard set forth in *Gibbs, supra,* the district court considered each of the four dismissed claims and concluded that the evidence supporting each claim would be either "generally" or "entirely different from the evidence required to uphold the validity of the patent and to establish its infringement." *Pate Co., supra,* 79 F.R.D. at 361. Considering the unique nature of these issues, we must agree.

ceived in judge's chambers on June 29, 1981 and not filed with the Clerk of the Court." We see no reason to reverse the district court's

As recognized by the district court, little, if any, evidence of Resech's alleged breach of contract not to compete "would serve as evidence on the central issues of patent validity." *Id.* Proof of Pate's second non-patent claim, misuse of confidential information or trade secrets, requires evidence from a different time period than does the infringement claim and would "inject new issues and a large amount of facts unrelated to the other portions of the case." *Id.* Moreover, evidence supporting the patent infringement claim would have been wholly insufficient to support the misuse of trade secrets claim.

Proof of Pate's third non-patent claim, intentional interference with Pate's employer-employee relationships, would obviously require evidence entirely different from that necessary to prove infringement. Finally, Pate's fourth non-patent claim, failure to assign a patent application, relates to a roof pipe carrier and curb assembly which has no direct relationship to the patent in suit. We agree that the dismissal of these claims served the interests of fairness and judicial economy and conclude that the district court did not abuse its discretion in so holding.

The district court, however, subsequently, as noted above, gave a comprehensive unfair competition instruction and permitted the filing of a second amended complaint containing the four dismissed claims, thus in effect reinstating the claims. In its order of May 26, 1981, the court granted defendant's motion for judgment n. o. v. on Pate's "unfair competition claim," and ordered judgment in favor of defendants on Pate's "claim that said defendants misappropriated its application for the Kaminski-Pate patent in suit...." With respect to the four unfair competition claims which had been dismissed in the June 28, 1978 order, the court said:

Since under the provisions of this court's Order of June 28, 1978 the defendants were not required to defend them-

determination on this matter and accept jurisdiction of these issues.

selves against the unfair competition claims dismissed therein, such claims could not properly have been submitted to the jury. Accordingly, because the jury's damages award was based upon those acts of unfair competition, by virtue of this court's Order of June 28, 1978 said award is void for lack of subject matter jurisdiction.

It seems clear that the district court by implication, if not expressly, adhered to its prior order dismissing the first four unfair competition claims for lack of subject matter jurisdiction.

 Pate seeks reversal of the judgment n. o. v. on its fifth unfair competition claim, misappropriation of the patent application. As this court recognized in *Odorizzi v. A. O. Smith Corp.*, 452 F.2d 229, 231 (7th Cir. 1971):

> The judgment n. o. v. for defendants presents the question whether "all of the evidence, when viewed in its aspect most favorable to the [plaintiff], so overwhelmingly favors [defendants] that no contrary verdict based on that evidence could ever stand."

(Quoting from *Illinois State Trust Co. v. Terminal R.R. Ass'n*, 440 F.2d 497, 500 (7th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96 (1971).)

As the district court noted, the evidence presented at trial related to the four "claims of unfair competition dismissed previously." The evidence did not support a "finding that the defendants misappropriated the plaintiff's *application* for the patent in suit." Rather, the "plaintiff failed to show that the defendants ever appropriated, much less misappropriated, that document or its contents."

Pate has not specifically addressed the judgment n. o. v. with respect to the application misappropriation claim; nor has it directed this court to any evidence in support of that claim. We affirm the judgment n. o. v. on this claim.

### VI. *Conclusion*

We conclude that the '110 patent is invalid as an obvious combination of old ele-

ments. The district court's holding that the patent was valid and infringed is reversed. The court did not abuse its discretion in dismissing four of Pate's unfair competition claims and granting judgment n. o. v. on the fifth claim. The holdings of the district court on these claims are therefore affirmed.

Reversed in part, and affirmed in part.